(Decided October 17th, 1862.)

\

## JOHN H. B. LATROBE, Trustee, *vs.* THE MAYOR & CITY COUNCIL OF BALTIMORE.

In an action for the recovery of taxes upon mortgages of real estate lying in the city of Baltimore, assessed to the trustee of said property, residing, at the time of the assessment, and of the institution of the suit, in Howard county, the *cestui que trusts* residing, at the same time, in said city—HELD:

1st. That taxes assessed upon a trust estate, constitute a legal cause of action against the holder of the legal estate; for, at law, the legal estate in the hands of the trustee, has the legal incidents and obligations of an absolute title, subject only to the claims in equity of the *cestui que trust.*

2nd. That in this case the appellant was the holder of the legal estate, upon the valuation of which the taxes sought to be recovered were imposed, and upon the construction given to the 13th Art. of the Bill of Rights, as well as upon the general rule above stated, he was the proper person to be assessed for their payment; and the assessment of the tax to the holder of

the legal estate, through him, reaches and fastens upon the interest of the beneficial owner.

3rd. That a like construction should be given to the Acts of 1841, ch. 23, 1847, ch. 266, and 1852, ch. 337, requiring "all property owned by persons residents of the State, and not permanently located elsewhere within the State, to be valued to the owner in the county, district or city wherein he or she may reside."

Upon the principle that the possession of personalty follows the person owning the legal title, the mortgages on the valuation of which the assessment of the taxes in this case was made, so far as they could be made the basis of an assessment, were beyond the jurisdiction of the appellee.

The recording of a mortgage in another county or district than that of the creditor's residence, cannot have the effect of locating the debt where the mortgage is recorded.

APPEAL from the Superior Court of Baltimore city.

This was an action by the appellee against the appellant, docketed by consent the 7th of October 1859, its object being the recovery of taxes due upon certain securities belonging to the estate of the late Joseph Thornburgh, deceased. The case was submitted to the Court below on a written agreement as to the facts, all of which are substantially stated in the opinion of this Court. The concluding paragraph of said agreement is as follows: "It is agreed that if the Court shall be of opinion, on the foregoing statement of facts, that the personal property of the late Joseph Thornburgh is liable to taxation where the trustee resides, there shall be a verdict for the defendant; but if they shall believe that the tax is to be levied in Baltimore, where the *cestui que trusts* reside, then there shall be a judgment for the plaintiff for $5,000, interests and costs." Judgment *pro forma* for the plaintiff was entered the same day upon which the suit was docketed, and the defendant appealed.

The cause was argued before BARTOL, GOLDSBOROUGH and COCHRAN, J.

*John H. B. Latrobe,* for the appellant:

The 13th Article of the Bill of Rights declares, that every person *holding property* in the State "ought to contribute his proportion of public taxes, for the support of government, according to his actual worth in real or personal property." Now the person *holding* the property, in this instance, is unquestionably the trustee, for "holding" is a technical term, and expresses clearly just such an interest as the trustee has in the premises. He holds the property for the benefit of the *cestui que trusts,* and it is his residence which must govern in fixing the rate of taxation.

In this case, the action has been brought in a Court of Law, to enforce a claim at law under an Act of Assembly, based on the 13th Article of the Bill of Rights. Let us see how the law regards the trustee and his *cestui que trust,* in their relations to the property now to be brought within the scope of either city or county taxation. At law, the *cestui que trust* is ignored altogether; a Court of Law recognizing only the legal owner of the estate. *Crabb on the Law of Real Property,* 1844, 55 *Law Lib.,* 399. 97 *Law Lib.,* 257. At common law, the legal estate in the hands of trustees has the same incidents as if the trustees were the usufructuary owner, subject, nevertheless, to the claims in equity of the *cestui que trust. Ibid.,* 1837. In *Rivet's case, Moore,* 890, it was assumed, apparently, as undisputed law, that the manorial burdens fell on the trustee, personally. The question here arose in connection with a copyhold estate. 97 *Law Lib.,* 266. So, at common law, the right of voting for coroners, sheriffs and members of Parliament, was vested in the trustee, and thus continued until the right was taken away by the Statute of 58 Geo. III. *Ibid.,* 1902. *Lewin,* 99 *Law Lib.,* 269. Now, if the legal estate of the trustee gave him the right to vote, which, as it was purely a personal matter, could

only be exercised where he was domiciled, why should not the estate be taxed according to the same domicil, unless there was a difference between real and personal estate in this particular, which we shall shew there was not. So absolutely, indeed, was the *cestui que trust* ignored at common law, that, before the Statute of Henry VIII, (of uses,) although there was a privity between the feoffee to uses and the *cestui que use,* yet to all other persons the feoffee was as much the real owner of the fee as if he did not hold it to the use of another. Even his wife was entitled to dower. See *Butler's note,* 2 *Co. Litt.,* 271—*b.* The feoffee being, then, as regards strangers, including the parties exercising the taxing power, the absolute owner of the estate, it is his residence, necessarily, that must determine the jurisdiction.

Had the present question arisen before the Statute of Henry VIII, the Court, then, would have had no hesitation in making the estate liable to taxation where the trustee resides. But the statute which changed the common law, does not affect cases where duties are imposed on the trustee, which makes it necessary for him to have the possession of real estate, to receive and pay over the rents and profits, &c. *Willis on Trustees,* 21. *Law Lib., Vol. X,* and cases cited. The statute of uses affected real estate only, and the estate here is personal. Does this make any difference? There is no reason why it should. The analogies of the law of real property furnish the data for decisions in regard to personal property wherever applicable. Here, all the reasons applicable to the one, are applicable to the other. It was the owner of the land, made so publicly by the feoffment, that the landlord looked to for his feudal dues. The law was for the benefit of the feudal lord; and there was no more reason why he should hunt up the owner of personal property than of real estate. It was the visible and the tangible that he sought; and he

claimed his feudal rights as well with regard to the cattle in the field, as to the field itself, where the reputed owner of both was the same person, though both field and flock may have been held in trust for a third party.  For authorities to show that there was no difference between real and personal property in this connection, see *Willis on Trustees*, 72, *note c*, 10 *Law Lib.*, and authorities there cited. *Lewin*, 97 *Law Lib.*, 257.   Where terms of years or other chattels, real or personal, are the subjects of trust, the trustee has the complete legal ownership.  *Ibid.*, 83, and authorities cited.  So much so, that no notice is taken of trusts of stock, but the trustee is considered the absolute owner.  *Ibid.*, 83, *note w.*

Arguing, then, from analogy, and adopting the principles here explained, it would seem that we can come to but one conclusion, which is, that the domicil of the trustee must govern, in the exercise of the taxing power, on personal property.   No case in this country has been found in the books, but it seems to have been decided in England, that trustees are liable to be rated for the property vested in them, unless they are trustees *exclusively* for public purposes, without any profit to themselves or a particular class. *Lewin on Trusts*, 99 *Law Lib.*, 265, citing *Queen vs. Sterry*, 4 *Eng. C. L. Rep.*, 32; 12 *Adolph. & Ellis*, 84.  The case before the Court falls within this ruling exactly.  It is the case of a private trust, with which the public has nothing to do.

If the *cestui que trust* is to be regarded as the person "holding the property" to be taxed, under the 13th Art. of the Bill of Rights, the State ought to have an available remedy against him after the tax has been assessed, if it remains unpaid; otherwise, there would be a right without a remedy.   And yet, what remedy could there be, except circuitously, against the *cestui que trust*, whose whole estate is in the income which the trustee pays him?   In

3      v.19

the present case, an action has been brought against the trustee, and in the event of a judgment against him, execution may issue, and the amount be collected; but, were the action against the *cestui que trusts*, and a recovery had, no execution against them would be available, and the judgment would have to be made the foundation of proceedings against the income payable by the trustee—and this, too, in another county, and before a different tribunal.

Again, were the *cestui que trusts* to remove beyond the State of Maryland, what alternative would there be, but to adopt the rule contended for, and make the domicil of the trustee the criterion or standard of the rate of taxation? Any other rule of taxation than this, would, in truth, be no rule at all; because that cannot be called a rule which is uncertain in its results, and may be impossible of application. All these difficulties are obviated by applying to the facts here, the principles that have had their origin in the common law, have been of daily recognition from the earliest times, and which, regarding the trustee, in a case like the present, as the absolute owner of the property, in the eye of a Court of Law, will, if correctly applied, make his residence the guide in determining the rate of tax to be collected from the personal property in his possession.

*John L. Thomas*, for the appellee:

The trustee in the will was only clothed with certain *powers*, to be executed by him for the purposes therein mentioned, and was not vested with the *legal* estate; but the *legal* estate vested in the *cestui que trusts*. *Fay vs. Fay*, 1 *Cushing*, 94. *Kuhn vs. Newman*, 13 *Legal Intelligencer*, 260. *Moore vs. Schultz*, 13 *Penn.*, 98. *McNish vs. Guerarde*, 4 *Strob. Eq.*, 66. *Ramsay vs. Marsh*, 2 *McCord*, 252. *Jackson vs. Schauber*, 7 *Cowen*, 187. *Perkins vs. Moore*, 16 *Ala.*, 9. 4 *Kent's Com.*, sec. 321, and secs. 294, 296. *Marshall*

*vs. Fisk,* 6 *Mass.,* 31.   If the trustee was vested with more
than the exercise of a power under the will, he could not,
under any circumstances, be any more than the *dry legal*
trustee, appointed by a third party, and acting in his be-
half, and for the benefit of the *real, substantial,* beneficial
usufructuary under the will, the *cestui que trust.* ·4 *Kent's
Com., secs.* 316 and 317, also *sec.* 296.   The *cestui que trusts*
who reside in Baltimore city, are, to all intents and pur-
poses, the owners of the estate to be taxed under the will.
The interest which they hold is the same as though there
were no trustee.   4 *Kent's Com., sec.* 302 to *sec.* 305.   "All
property *owned* by persons residents of this State, and not
permanently located elsewhere within this State, shall be
valued to the *owner* in the county, district or city wherein
he or she may reside."   1841, ch. 23, sec. 9.

The words of a statute are to be taken in their ordinary
and familiar sense, signification, and import, and regard is
to be had to their general and popular use.   *Dwar. on Stat.,
sec.* 702.   The word *owner,* means the rightful possessor,
as contradistinguished from any other party who may have
or hold the property, but for the benefit of some other.
*Vide Webster's Dict.   Bouv. Law Dict.,* vol. 2, *letter o.*

The Acts in relation to tax and assessment, must be con-
strued together, *in pari materia,* and the real intention of
the law-makers must prevail.   *Dwar. on Stat., secs.* 690,
700 and 703.   It was undoubtedly the intention of the
Legislature to assess the tax to the *beneficial* owner of the
property.   1841, ch. 23, sec. 9.   1852, ch. 337, secs. 9 to
12.   1847, ch. 266, secs. 10 to 13.   Md. Code, vol. 1, title
"Revenue and Tax."   If the trustee pay the tax upon the
trust property, he does so in his fiduciary capacity, as and
for the *cestui que trusts.*

A statute made *pro bono publico,* shall be construed in
such manner that it may, as far as possible, attain the end
proposed.   *Dwarris, secs.* 722, 723.   Taxes are levied upon

the people for the support of the government, be that either State or municipal, and the power of taxation extends *to all the people* of a government, and embraces *every thing* which may be fairly considered as a part of the mass of property in the State. *Howell vs. The State,* 3 *Gill,* 14. If the meaning and reason of the law were as contended for by the appellant, a large proportion of the assessable property of Baltimore would be taken away from her, and it would be in the power of a trustee to make constant changes of residence, and to carry along with him his trust estate, and finally to settle in that county or city where the taxes were the lowest, whilst the *cestui que trusts* could live in a large commercial city, enjoy its advantages, and partake of its privileges, and refuse to bear their just proportion of the public tax, for the support of the government under which they live, and by whose laws they are protected.

COCHRAN, J., delivered the opinion of this Court:

This is an appeal from a judgment obtained in a suit at law, brought to recover taxes assessed on mortgages of property in the city of Baltimore, made to the appellant as trustee of the estate of Joseph Thornburg, deceased. At the time of the assessment and institution of the suit, the appellant was a resident of Howard county, the *cestui que trusts* being, at the same time, residents of Baltimore city, and the question as to the liability of the appellant for the taxes assessed, is the only one presented.

We are not aware that the Acts of Assembly, regulating the imposition and collection of taxes, have effected any modification of the rules of law, which otherwise must govern the determination of this question. The appellee, in resorting to its remedy at law, assumes that the taxes assessed constitute a legal cause of action, and that the appellant, as the holder of the legal title of the property

upon which the assessment was made, is liable for its satis-
faction. That taxes assessed upon a trust estate, constitute
a legal cause of action against the holder of the legal title,
we do not doubt, for at law the legal estate in the hands of
a trustee, has the legal incidents and obligations of an ab-
solute title, subject only to the claims in equity of the *ces-
tui que trust.* *Crabb on Real Property,* 55 *Law Lib.,* 399;
97 *Law Lib.,* 257. *Willis on Trustees,* 10 *Law Lib.,* 21
72, 83. *Denton vs. Denton,* 17 *Md. Rep.,* 403.

In this case, the appellant was the holder of the legal
estate, upon the valuation of which the taxes sought to be
recovered were imposed, and upon our construction of the
13th Art. of the Bill of Rights, as well as upon the general
rule stated, he was the proper person to be assessed for
their payment. The declaration in that Art. of the duty
or obligation of every person holding property in the State
to contribute his proportion of public taxes, according to
his actual worth in real or personal property, must be un-
derstood as intending and meaning a *legal obligation* to
contribute to the public taxes, according to actual worth,
and in that sense, the obligation for the payment of taxes
falls upon the trustee or holder of the naked legal title.
Upon this construction, the obligation of one entitled to
the beneficial interest of property held by a trustee, to con-
tribute to the public taxes, according to actual worth, is
none the less satisfied, for in such a case the assessment of
the tax to the holder of the legal estate, through him,
reaches and fastens upon the interest of the beneficial
owner. In our opinion, a like construction should be given
to the provisions of the Acts of 1841, ch. 23, 1847, ch.
246, and 1852, ch. 327, requiring all property owned by
persons residents of this State, and not permanently located
elsewhere within the State, to be valued to the owner in
the county, district or city wherein he or she may reside,
or, in other words, that these provisions contemplate and

·mean the holding or ownership of the legal estate of the property to be valued, without regard to the ownership of the equitable title or use. Adopting this view, we have then to ascertain the location of the property for which the. taxes claimed were assessed, in order to dispose of the question presented. Upon the principle that the possession of personalty follows the person owning the legal title, the mortgages, on the valuation of which the assessment of the taxes in this case was made, so far as they could be made the basis of an assessment, were beyond the jurisdiction of the appellee. The assessment, in such cases, is made upon the amount of the mortgage debt, and not upon the value of the property mortgaged to secure it. As the basis of the assessment is the amount of the debtor's obligation to the creditor, the recording of a mortgage in another county or district than that of the creditor's residence, collaterally securing its satisfaction, cannot have the effect of locating the debt where the mortgage is recorded.

We think the taxes, sought to be recovered in this case, were assessed without authority, and therefore reverse the judgment.

. *Judgment reversed.*