(Decided 22d April, 1868.)

JOHN S. TYSON, and others, *vs.* THE STATE OF MARYLAND.

*Code—Orphans' Court—Constitutionality of the Tax on Collateral Inheritances, &c.*

The 187th section of Art. 81, of the Code of Public General Laws, which declares the judgment of the Orphans' Court final and conclusive, applies only to the proportion of the tax which it is the duty of said Court to assess among the parties interested in the estate.

Tyson, *et al. vs.* State.

The tax imposed on collateral inheritances, distributive shares, and lega-
cies by the 124th section of Art. 81, of the Code of Public General Laws,
is not in conflict with the 15th Article of the Declaration of Rights of
the Constitution of 1864.

APPEAL from the Orphans' Court of Howard County.

Annie M. Hopkins, by her last will and testament, which
was filed and admitted to probate in the Orphans' Court of
Howard county, on the 19th of April, 1864, appointed John
Snowden and R. P. Snowden, trustees and executors, and to
them devised and bequeathed all her property *in trust*, for
the sole and separate use of her sister, Mrs. Rachel Tyson,
for life, (except one hundred dollars annually of the income,
to each of the children of Mrs. Tyson,) and after her decease,
to the child or children of Mrs. Tyson, in fee, in equal por-
tions, share and share alike. Provision was also made for the
emancipation of certain slaves, at designated periods. On the
19th of June, 1866, the Orphans' Court of Howard county,
passed an order to cite Rachel Tyson, Cornelia, Annie M. and
John S. Tyson, to appear on the 3d of July, 1866, "to show
cause why they should not pay the collateral tax;" and cita-
tion issued accordingly for the above named and Ida Tyson.
On the 10th of July, 1866, the said parties appeared, describ-
ing themselves as "collateral devisees of the estate of Annie
M. Hopkins, deceased," and asked leave "to except to any
order of the Court requiring them or either of them to pay,
for the use of the State of Maryland, the tax or any part of
the tax of one and one-half per cent. on the value of said
estate, mentioned in the 81st Art. of the Code of Pub. Gen'l
Laws, under the title of 'tax on collateral inheritances, dis-
tributive shares and legacies,'" because:

1. The imposition of said tax is in violation of the 15th
Article of the Declaration of Rights, of the Constitution of
the State of Maryland.

2. The tax is over and above, and in addition to the pro-
portion of public taxes for which said estate, the holder or
holders thereof is, or are liable, and is not imposed or laid

with a political view for the good government and benefit of the community.

3. The exaction of said tax would be the taking of private property for public use, without just compensation as agreed upon by the parties or awarded by a jury, being first paid or tendered to the owners of said property.

4. If the Court pass any order for the payment of said tax, said order must require a portion of said tax to be paid by each of the devisees, and the three devisees, Cornelia, Annie M. and Ida Tyson, are not, nor is either of them, assessed to the value of fifty dollars or more.

5. Cornelia, Annie M., John S. and Ida Tyson, are only entitled to a remainder in fee-simple after the termination of a life estate, and are therefore not liable for the payment of taxes on the property devised, until the death of the " *cestui que vie.*"

6. Part of the estate devised, appraised at the value of $4324.94, is a public loan created by the United States, and exempt from taxation by the state of Maryland.

On the 18th of June, 1867, the Orphans' Court passed an order overruling the exceptions, save in so far as they applied to the bonds of the United States, which were exempted from the tax, and requiring that on the balance of the estate, the tax amounting in the whole to $899.93, be apportioned among and paid by the collateral devisees, as follows:

| | |
|---|---:|
| By Rachel Tyson, . . . . . . | $108 01 |
| By Cornelia Tyson, . . . . . . | 197 98 |
| By Annie M. Tyson, . . . . . | 197 98 |
| By Jno. S. Tyson, . . . . . . | 197 98 |
| By Ida Tyson, . . . . . . | 197 98 |
| | $899 93 |

And "that the defendants pay the costs of this cause." From this order, the defendants on the same day appealed.

A motion was made to dismiss the appeal, which was argued at the same time with the case on its merits.

The cause was argued before NELSON, STEWART, MILLER, ALVEY and ROBINSON, J.

*John S. Tyson*, for the appellants :

The exceptions filed in the Orphans' Court are in the nature of a plea to the jurisdiction, or authority of that Court. They alleged that the Legislature cannot confer upon that Court, authority to order payment of the tax. The motion to dismiss this appeal upon the ground that the order of the Orphans' Court is final, is therefore a *petitio principii*, since it assumes that that Court *had* authority to pass the order. Moreover the Code professes only to make the decision of the Orphans' Court final as to the *proportion* to be paid by each party—a matter not at all involved in this appeal. The appellants rely on the 15th Article of the Declaration of Rights of 1864. This is the same as the 13th Article of 1851, except that in the former the words *" on persons or property"* are omitted. The principle of liability for taxes, in proportion to actual worth in real and personal property, declared by the 13th Article of the Declaration of Rights, is a *bar* to double taxation. *State vs. Stirling*, 20 *Md. Rep.*, 516, 520 ; *Moale vs. Mayor, &c., of Baltimore*, 5 *Md. Rep.*, 320 ; *Mayor, &c., of Baltimore vs. Balt. and Ohio R. R. Co.*, 6 *Gill*, 291 ; *Williams' Case*, 3 *Bland*, 253–256.

This tax is *additional* to the *proportion* of public taxes to which this property is liable under the regular State and county assessment. Therefore it is *barred* by the Declaration of Rights. Nor is it sufficient, to sustain the validity of this tax, that it is borne proportionally by all property collaterally devised. " The Legislature can impose no tax upon it, which is not *equally* borne by every other *species* of property within the State, in proportion to its value." *Mayor, &c., of Baltimore, vs. Balto. and Ohio R. R. Co.*, 6 *Gill*, 291.

The fact that the same property may be designated by *two* names or descriptions, will not make it liable to taxation under both names or descriptions. Exemption of the *stock* is exemption of the *franchise and property* of the company. *Gordon, Ex'r, vs. Mayor, &c., of Baltimore,* 5 *Gill,* 236. A tax on *stock* is, in effect, a tax on *deposits* invested in such stock. If an extra tax can be put on all property *collaterally* devised, why not on all property devised in *any* way? Why not on all property *descended* in any way? Why not on *any* property that the Legislature may choose to put it upon? To this untenable ground must they be driven, who would defend this unjust and illegal imposition.

Why are United States bonds exempt? They are exempt by law from *all* taxation. But the Declaration of Rights exempts the balance of the estate, not from *all* taxation, but from *all extra* taxation. If the State can levy *this* tax, it can, with equal right, levy a tax of one hundred per centum, and thus deprive the appellants altogether of their property. If the tax can be levied *once,* it can be levied every year. The only defense against this injustice, is the great principle of equality of taxation. In the Declaration of Rights another principle is involved, besides that of equality, viz: that only the *holder* of property is liable for taxes on it. It follows that the *trustee* and not the *cestui que trust,* is to pay taxes. *Latrobe, Trustee, vs. Mayor, &c., of Baltimore,* 19 *Md. Rep.,* 21. And so the Act of 1864, ch. 200, declares that the person to whom an estate may be devised, whether "*in trust or otherwise,*" is to pay this tax. It follows also that the reversioner is not liable for taxes during the tenancy for life. A reversioner may be a pauper, or not assessed to the value of $50. *Code of Pub. Gen'l Laws, Art.* 81, *sec.* 5. It is so averred in this case, and the *onus probandi* is upon the State to show the contrary.

The constitutionality of this tax has always been discedited, even by the Legislatures which imposed it, as shown by the stringent provisions enacted to prevent the validity of the law

from being contested. 1844, *ch.* 237, *sec.* 6; 1845, *ch.* 202, *sec.* 3; 1846, *ch.* 344, *sec.* 3; *Code of Pub. Gen'l Laws, Art.* 93, *sec.* 50.

These provisions destroy what little respect the lapse of time might otherwise have obtained for this law.

The appellee claims that "the tax in question belongs to the same class as licenses, stamp duties," &c. On the contrary, it differs from these altogether, in being *a direct tax on property*; and if the principle of equality has any application at all, it is applicable to a direct tax, not laid with a political view, but solely as a revenue measure. A *stamp tax*, so-called, is not a tax in the ordinary sense, either on property, or on the paper, or parchment. It can only be justified, if at all, upon the theory, that the State may prescribe as a part of the *form* of contracts, &c., that they shall be written on stamped paper. And there is some appearance of reason in saying, that this imposition is a tax on the property "*in passing*," since the stamp is put upon the instrument by which the property passes. But if the State, by such subterfuges as these, can violate the spirit and evade the letter of the great principal of equality of taxation, that is no reason why the State, not having used any subterfuge, but placed a direct tax on property, should be allowed openly to violate both the letter and the spirit of the fundamental law.

*George W. Sands,* for the appellee:

On the motion to dismiss the appeal the appellee relies on the 137th sec. of Art. 81, of the Code of Pub. Gen'l Laws, which provides that in a case like the one at bar, "the Orphans' Court of the county or city in which administration is granted, shall determine in its discretion, and at such time as it shall think proper, what proportion each party who may be thus interested in said estate or property, shall pay of said tax; and the judgment of the said Court shall be final and conclusive;" therefore, no appeal will lie from the order in question. But assuming that the Court may entertain the

appeal, the appellee insists that the tax in question was imposed by the exercise of a clear constitutional power in the Legislature, and is not in conflict with Article 15, of the Declaration of Rights of 1864. The tax objected to, is not a "double tax;" a double tax is a tax twice imposed on the *same interest.* *State vs. Stirling,* 20 *Md. Rep.*, 520.

A tax "under the regular State and county assessment," is to be paid by "a person in the State, or person holding property therein." This contemplates a *living* owner or occupant, and secures equality of taxation while he lives. But when he dies, the sovereign power of the State takes possession of the whole estate, and declares who shall have any, and what part of it, and upon what terms. In cases of intestacy, if there be no relations within the fifth degree, the whole surplus of personal estate shall belong to the State. *Code of Public General Laws, Art.* 93, *sec.* 136. And in case of real estate, if the last owner in fee die intestate thereof, and without heirs, the whole escheats to the State. *Code, Art.* 54, *sec.* 16. All "inheritances, distributive shares and legacies," are disposed of according to the will of the sovereign power of the State as expressed in the laws. No right to any of them is recognized as having any "foundation in nature or in natural law." "Wills, therefore, and testaments, rights of inheritance and successions, are all of them creatures of the civil or municipal laws." 2 *Black. Comm.*, 2, 12. The claimant, in every case, must show his perfect legal title by legal proof of every legal requisite. The sovereign power in the State has thus asserted supreme dominion over the whole subject, taking the whole estate in charge upon the death of the last owner. As to "collateral inheritances and devises" of land, the State has declared who shall take, and upon what terms, and has created a lien upon them from the death of the decedent until the tax imposed by law shall be paid. *Code, Art.* 81, *sec.* 135. The State declares that neither the collateral heir or devisee shall have the land except upon paying the tax or duty upon the privilege of enjoying it. The parties entitled may pay the tax and take the

property; or may refuse or neglect to pay, in which case, the State provides for a sale to pay the tax and expenses of sale. *Code, Art.* 81, *sec.* 138.

So as to personalty, the collateral legatee or collateral distributee is entitled only to what the law declares to be his share, to wit: *ninety-eight and one-half per centum* of the ascertained value, the residue belonging to the State. The executor or administrator must pay the State's share first. Those showing themselves to be within the legal description of parties to whom the law awards the residue, may take it on the terms prescribed or let it alone. "The right of taxation is never presumed to be surrendered by the sovereign power, and that such surrender is never made unless it be the result of express terms or necessary inference." *Mayor, &c., of Baltimore, vs. Baltimore and Ohio R. R. Co.*, 6 *Gill*, 292. The right to tax is an incident of sovereignty and is co-extensive with that to which it is incident. All subjects over which the sovereign power of the State extends, are objects of taxation. The sovereignty of the State extends to every thing which exist by its own authority, or is introduced by its permission. *Howell vs. The State*, 3 *Gill*, 14.

The only practical restriction of the taxing power imposed by Art. 15, of the Declaration of Rights of 1864, is against "taxes by the poll, and inequality of taxation." "Paupers" have a more sure protection than a constitutional shield affords. To show that the taxing power was left otherwise unfettered, the same Article declares: "Yet fines, duties or taxes may properly and justly be imposed or laid with a political view, for the good government and benefit of the community." These words mean "for all governmental purposes consistent with the spirit of republican institutions." If a law be within the constitutional power of the Legislature, the judiciary cannot inquire into the motives of the exercise of that power. The judiciary is bound by every consideration of law and courtesy to presume that the Legislature has not violated the Constitution. The tax in question belongs to

the same class as licenses, stamp duties, &c., and may be considered as somewhat resembling "fines for alienation," which were incident to tenure by Knight service and Copyhold tenure. It is imposed "with a political view, for the good government and benefit of the community."

The executors in this case took the personal estate *in trust,* first, to pay the tax in question charged on the personalty, "before they pay any legacy," (*Code, Art.* 81, *sec.* 125,) and to hold the real estate until "they shall collect the tax thereon from the parties liable to pay it," and if they neglect or refuse to pay, to sell under the order of the Orphans' Court so much as may be necessary to pay said tax, &c. *Code, Art.* 81, *sec.* 136. The property is charged with this tax or duty, in "*passing* from any person who may die seized and possessed thereof," "to any person," "other than to the father," &c. *Code, Art.* 81, *sec.* 124. After this tax or duty shall have been paid, and the property shall have *passed* into the possession of the trustees under the will, it will be "liable under the regular State and county assessment," to "equality of taxation," and the trustees will be bound to pay it out of the income of the estate, during the tenancy for life. Taxes assessed upon a trust estate constitute a legal cause of action against the holder of the legal estate, and through him reach and fasten upon the beneficial owner. *Latrobe, Trustee, vs. Mayor, &c., of Baltimore,* 19 *Md. Rep.,* 13.

ROBINSON, J., delivered the opinion of this Court.

The motion to dismiss the appeal in this case, must be overruled. The 137th sec. of Art. 81, of the Code of Pub. Gen'l Laws, which declares the judgment of the Orphans' Court to be final and conclusive, applies only to the proportion of the tax which it is the duty of said Court to assess among the parties interested in the estate. The exceptions of the appellants are not to the apportionment thus made, but to the constitutionality of the law imposing a tax on collateral inheritances, &c. It is insisted that the law is in

conflict with the 15th Article of the Declaration of Rights, of the Constitution of 1864, which declares "that the levying of taxes by the poll is grievous and oppressive, and ought to be prohibited; that paupers ought not to be assessed for the support of the government, but every other person in the State, or person holding property therein, ought to contribute his proportion of public taxes, for the support of government, according to his actual worth in real or personal property; yet fines, duties or taxes may properly and justly be imposed or laid, with a political view, for the good government and benefit of the community." The act imposing a tax on "collateral inheritances" was passed in the year 1844, and from that time it has been recognized by the Orphans' Courts in every county in the State, as a valid exercise of legislative power. Under it more than a half a million of dollars have been collected and paid into the treasury of the State; and its constitutionality is now for the first time questioned. Moreover the operation and effect of the law were before this Court, in the case of The State vs. Dorsey, Ex'r of Worthington, 6 Gill, 388, in which it was held, that a bequest of freedom to a slave was "a specific legacy, and liable to the tax imposed by the Act of 1844, ch. 237. The constitutionality of the law, it is true, does not appear to have been raised, but can we presume that the consideration of it escaped the attention of the eminent counsel in the cause, or of the Court which was called upon, for the first time, to give a construction to the operation of the law. If, however, the question is to be considered as res nova, we have not the slightest doubt as to the constitutionality of the law. The 15th Article of the Declaration of Rights did not engraft upon the fundamental law, any new principle in regard to taxation. On the contrary, the same provision is to be found in every Constitution adopted in this State, from 1776 to the present time, and in regard to which there has been but one construction in the whole history of our legislation. The restrictions imposed by it upon the legislative power, as to the objects of taxation, are

explicitly declared. Poll taxes are denounced as grievous and oppressive; paupers are exempted from assessment; and all other persons are required to pay their proportion of public taxes, according to the value of their property. Arbitrary taxes on property without regard to value, are expressly prohibited, and all measures for the collection and imposition of taxes upon *property*, are required to conform to this general principle of equality. Whilst thus providing for a *uniform* mode of taxation on property, it was not the purpose of the framers of the Constitution to prohibit any other *species of taxation*, but to leave the Legislature the power to impose *such other* taxes as the necessities of the government might require. This construction is strengthened by the fact, that when the convention of 1851 met, composed of many of the most eminent lawyers and Judges in the State, we find them adopting the same Article in the Declaration of Rights, and not one word of complaint against the constitutionality of the Act of 1844, chap. 237, then in force. On the contrary, in the debate upon the Article, the power of the Legislature to impose taxes upon collateral inheritances, commissions of executors, &c., was expressly admitted. *Debates Constitutional Convention*, 1 *vol.*, 186. With the construction thus given to this Article in the Constitution of 1851, we find the convention of 1864, adopting the same Article, and it nowhere appears in the debate, that there was any purpose to disturb the then existing system of taxation. Such then, seems to have been the uniform interpretation of this Article in the Declaration of Rights, acquiesced in by the people of the State, including the legal profession, and sanctioned by the framers of the Constitution itself. The objection to the manner in which the tax has been assessed by the Orphans' Court, cannot be sustained. In the case of *Latrobe, Trustee, vs. Mayor and C. C. of Balto.*, 19 *Md. Rep.*, 14, the Court held, that in the absence of any law "regulating the imposition and collection of taxes," the trustee holding the legal title was properly chargeable with the tax. The 137th sec. of Art. 81, of the

Code of Pub. Gen'l Laws, requires that in a case like the one now before us, the Orphans' Court shall determine what proportion each party who may be interested in the estate, shall pay of the tax by it imposed. The action of the Orphans' Court was in conformity with the requirements of the law. For these reasons the order of the Orphans' Court must be affirmed.

*Order affirmed.*

(Decided 30th April, 1868.)