# STATE TAX COMMISSION

*vs.*

# COUNTY COMMISSIONERS OF BALTIMORE COUNTY.

*State Tax Commission—Appeal by County Commissioners—Corporate Stock—Situs for Taxation—Voting Trustees.*

Code, Art. 81, sec. 239, providing that any taxpayer, taxpayers or city, town or village, having been assessed by the order of the county commissioners, may appeal to the State Tax Commission, does not authorize an appeal to the circuit court by the county commissioners from an order of the commission.　p. 672

Code, Art. 81, sec. 239, providing that "there shall be an appeal to court on questions of law only from decisions of the State Tax Commission," does not give a right of appeal on all questions of law, regardless of who may take the appeal, it being provided in a previous paragraph by whom appeals can be taken.　p. 672

No statutory authority exists for an original appeal by county commissioners to the State Tax Commission, nor for an appeal by them from the action of that commission.　p. 674

On an appeal by the State Tax Commission from a decision of the circuit court refusing to dismiss an appeal by county commissioners from an apportionment by the Tax Commission, that an attorney appears for the county commissioners does not justify the assumption that such commissioners applied to the Tax Commission to change or correct the apportionment.　p. 675

Code, Art. 81, sec. 215, providing that all personal property in which any resident of any county has an equitable interest, with legal title to the same in some person who is a resident of some other county, shall be valued and assessed to the equitable owner in the county in which he resides, requires shares of corporate stock, equitably belonging to residents of Maryland, though transferred to voting trustees, to be assessed in the counties in which the equitable owners reside.　p. 677

Syllabus.

The holders of certificates issued by voting trustees of corporate stock, rather than the trustees, are the real and substantial owners of the shares, and consequently the provision of Code, Art. 81, sec. 162, that shares of stock held by non-residents shall for county and municipal purposes be valued to the owners thereof in the county or city in which the corporation is situated, applies to voting trust certificates held by non-residents.

p. 681

*Decided June 27th, 1921.*

Appeal from the Circuit Court for Baltimore County (DUNCAN, J.).

Petition by the County Commissioners of Baltimore County by way of appeal from an order of the State Tax Commission. From an order dismissing a motion in behalf of the Commission to dismiss such appeal, and reversing the order of the Commission, the Commission appeals. Reversed.

Section 102 of Article 23 of the Code, referred to in the opinion, is as follows:

> "A stockholder of any corporation of this State may by agreement in writing transfer his stock to any person or persons for the purpose of vesting in him or them the right to vote thereon, for a time not exceeding five years, upon terms and conditions stated, pursuant to which such person or persons shall act. Every other stockholder, upon his request therefor, may by like agreement in writing also transfer his stock to the same person or persons, and thereupon may participate in the terms, conditions and privileges of such agreement. The certificate of stock so transferred shall be surrendered and cancelled and certificates therefor issued to such transferee or transferees in which it shall appear that they are issued pursuant to such agreement; in the entry of such transferee or transferees as the owners of such stock on the proper books of said corporation, that fact shall also be noted, and thereupon he or they only may vote upon the stock so

transferred during the time in such agreement speci-
fied; a duplicate of such agreement shall be filed in
the principal office of the corporation and be open to
the inspection of any stockholder, daily during busi-
ness hours."

The cause was argued before BOYD, C. J., BRISCOE,
THOMAS, PATTISON, URNER, STOCKBRIDGE, and OFFUTT, JJ.

*Alexander Armstrong, Attorney General,* and *Amos W. W.
Woodcock, Assistant Attorney General,* for the appellant.

*Allan C. Girdwood,* with whom was *Edward H. Burke* on
the brief, for the appellee.

BOYD, C. J., delivered the opinion of the court.

The Commerce Trust Company of Baltimore City had a
capital stock consisting of 10,000 shares, of which 9,685 were
transferred to T. Edward Hambleton of Baltimore County,
William G. Baker, Jr., and Virginius G. Dunnington of Bal-
timore City, trustees under a voting trust agreement, dated
June 12, 1919. There is some difference in the statements
in the briefs as to the exact number of the 9,685 shares which
are held by non-residents of the State—that of the Attorney
General stating that there were 3,551 and that of the appellee
that there were 3,590 shares—but that is immaterial for the
purposes of this opinion. The shares were valued by the
State Tax Commission at $62.50 each, and it passed the fol-
lowing order:

"In Re Commerce Trust Company:

"It is, this 15th day of September, 1920, ordered by
the State Tax Commission, that the distribution of the
assessment of the shares of the Commerce Trust Com-
pany for 1920 be corrected, and that the assessment on
said shares be entered and certified to the respective
localities of the residences of the respective sharehold-
ers, and that, so far as the 9,685 shares standing in the
names of voting trustees are concerned, the same be

treated as the taxable property of the shareholders represented by said voting trustees, and not of the voting trustees.

> "(Sgd.)    Oscar Leser,
> "(Sgd.)    J. Enos Ray,
>                   "Commissioners."

On the 13th of October, 1920, the County Commissioners of Baltimore County filed in the Circuit Court for that county an "appeal from the State Tax Commission." The petition quotes the above order of the State Tax Commission, alleges that Baltimore County was entitled to one-third of the aggregate assessment represented by the 9,685 shares and also 50 other shares at $62.50 per share, but that the commission had only certified to that county for the year 1920 the sum of $2,812.50, being for 45 shares.

The case was set for hearing and on November 6, 1920, the Attorney General, representing the State Tax Commission, filed a motion to dismiss the appeal, the principal reason assigned therefor being that the County Commissioners had no right of appeal. On the 18th of February, 1921, the Circuit Court passed an order *dismissing* that motion, reversing the order of the State Tax Commission, and directing it to pass an order correcting the distribution of the assessment of the shares of the Commerce Trust Company "and that the assessment on shares be entered and certified by the State Tax Commission to the places of residence of the respective shareholders and that so far as the assessment representing the 9,685 shares of capital stock of said company standing in the name of the three trustees is concerned, one-third of the total amount represented by 9,685 shares shall be certified to the respective place of residence of each trustee." From that order this appeal was taken. The questions presented are: First—As to the right of the County Commissioners of Baltimore County to appeal; second—Whether the residences of the voting trustees or of the owners of the shares transferred to them fix the situs for the taxation of such shares.

1. The State Tax Commission was created by the Act of 1914, Chapter 841, and large powers were conferred on it. The act provided for the appointment by the commission of a supervisor of assessments in each county of the State and in Baltimore City, abolished the office of State Tax Commissioner, and all of the duties imposed on him or powers given him devolved upon the State Tax Commission.

The provisions for appeal by that Act are contained in what are now Sections 239 and 245 of Article 81 of the Code. It is clear that the right to take this appeal cannot be sustained under Section 239, as it provides that "any taxpayer, taxpayers or city, town or village may demand a hearing before the County Commissioners or Appeal Tax Court of Baltimore City, as to the assessment of any property or any unit of tax value," and that "any taxpayer, taxpayers or city, town or village having been assessed by the order of the County Commissioners or Appeal Tax Court of Baltimore City, as hereinbefore provided, may appeal to the State Tax Commission; or the supervisor may appeal from any decision," but, of course, it could not have been intended to give the County Commissioners the right of appeal from their own order, and it did not give them an appeal from the State Tax Commission. The third paragraph of that section, in providing that "there shall be an appeal to court on questions of law only from decisions of the State Tax Commission," etc., cannot properly be construed, as contended by the appellee, to mean that there could be appeals on all questions of law, regardless of by whom they were taken, as it had provided in a previous paragraph by whom appeals could be taken.

It is likewise clear that Section 245 does not authorize the county commissioners to appeal to court from the action of the State Tax Commission, as the Act of 1910, Chapter 430, referred to in that section, only provides that "any person or persons, or corporation claiming to be aggrieved because of any assessment made by county commissioners of any one of the counties of this State, or because of the failure to reduce or abate an existing assessment, may, by petition, appeal,"

etc. If "any person or persons or corporation" takes an appeal from the county commissioners to the Circuit Court, then an appeal to this Court can be taken by the petitioner or petitioners or by the county commissioners. Now, by virtue of the provision in Section 245, that the State Tax Commission shall be substituted for the court, the appeal is to that commission, instead of the Circuit Court, but there is no authority given in that section, or any other that we have found, for an original appeal by the county commissioners to the State Tax Commission, and there is no appeal by them provided for from the action of that commission. Under the Act of 1908, Chapter 167 (Section 18 of Article 81) the original appeal in Baltimore was from the Appeal Tax Court of Baltimore, and hence the Mayor and City Council was given the right of appeal, as well as any person or persons or corporation claiming to be aggrieved by the action of the Appeal Tax Court.

The appellee, after contending that the last paragraph of Section 239 is unlimited, and provides for appeals from a decision of the State Tax Commission as regards any assessment or question of law, and arguing from that that the county commissioners could appeal, said in its brief: "This contention of the appellee and the view of the Judge below are borne out by all of the cases in the Court of Appeals from action of the State Tax Commission," and cited *Baltimore* v. *Ches. & Pot. Tel. Co.*, 131 Md. 50; *Postal Tel. Co.* v. *Harford County*, 131 Md. 96; *Hyattsville* v. *Ches. & Pot. Tel. Co.*, 131 Md. 589; *Baltimore* v. *German Fire Ins. Co.*, 132 Md. 380; and *Baltimore* v. *Machen*, 132 Md. 618. Those authorities do not support that contention. In the first one mentioned the telephone company appealed to the State Tax Commission from an assessment made by the Appeal Tax Court of the physical structures of the company in Baltimore City. The State Tax Commission reversed that assessment and an appeal was taken to the Baltimore City Court by the city, which it was expressly authorized to do by the Act of

1908, Chapter 167, continued in force by Section 245. In the *Postal Tel. Co. case* the company applied to the county commissioners to abate an assessment, which they refused to do, and the company appealed to the State Tax Commission, which increased the assessment. The company then appealed to the Circuit Court for Harford County, which dismissed its appeal, and an appeal to this Court was taken by it and the lower court was affirmed. In the *Hyattsville case* the telephone company appealed from an assessment of the personal property made by the municipality, which it was not authorized to make, as the State Tax Commission took such property into consideration in assessing the shares of stock of the company. The point was made that there was no provision for an appeal in such case to the State Tax Commission, but we held that, regardless of whether it was technically an appeal, the commission had control over the assessments of corporations and they had the right to apply to it for relief against an unauthorized assessment. In the *German Fire Insurance Company case,* an application was made by the company to the State Tax Commission to deduct the amount invested by it in certain mortgages, in computing the value of its shares of stock, which the commission refused to do, and the company appealed to the Baltimore City Court, which reversed the action of the State Tax Commission. In the *Machen case* the assessment was made by the Appeal Tax Court and was annulled by the State Tax Commission. The Baltimore City Court, on appeal to it, affirmed the action of the commission, and an appeal was taken to this Court by the city, as was clearly authorized by the Act of 1908.

It will thus be seen that in each of those cases the question originally arose at the instance of a taxpayer, but there is nothing in any of them or other cases decided by this Court, or in the statutes, which authorizes the county commissioners of a county to take an appeal from the action of the State Tax Commission in such a matter as this. Under our decision in the *Hyattsville case* the corporation and the shareholders, so far as they are affected, can apply to the State Tax

Commission to correct an error in an assessment or apportionment and can appeal from its decision on questions of law, or the supervisor of assessments could apparently do so under Section 236, but if the county commissioners have reason to believe that an apportionment of the shares of stock assessed by the State Tax Commission is not authorized by law and injuriously affects the county they represent, they must adopt some other proceeding to have the question tested, as no appeal by them is provided in such a case.

In addition to what we have said, the record does not disclose that there was an application by the County Commissioners of Baltimore County to the State Tax Commission to change or correct the apportionment. The mere fact that Mr. Girdwood appears for the county commissioners, as one of the attorneys in this appeal, is not sufficient to enable us to assume that it did apply to the State Tax Commission. The appeal was taken by Mr. Burke, described in the petition for appeal as attorney for the county commissioners, and his name is also in the brief with Mr. Girdwood, but in the correspondence in the record, while it does not definitely appear whom he represented, it is indicated that Mr. Girdwood was representing the trust company, which might have sought relief in court. On request of the commission he furnished the list of stockholders of the trust company and the form of the voting agreement, and also wrote to the commission correcting information given as to the residences of the trustees named in the voting trust at the time the trust company reported its list of stockholders. While the proceedings before the State Tax Commission are informal, it would be more than "informal" to permit a party who had never made any complaint, or applied to the State Tax Commission for the correction of a supposed error, to take an appeal from its action, in the absence of some statute authorizing such a proceeding. So without pursuing this question further, we are of the opinion that the lower court should have dismissed the appeal of the county commissioners.

2. Although we have reached the conclusion above announced, as the question was fully argued and it is important that it be decided without unnecessary delay, we will determine whether the State Tax Commission was right in passing the order of the 15th of September, 1920. There has been some conflict between the decisions of different jurisdictions as to the validity of voting trusts—although it has generally been held that they are not *per se* unlawful, and the differences between the courts have for the most part arisen by reason of the purposes for which they were formed. In this State we have a statute on the subject which is now Section 102 of Article 23 of the Code.

The agreement in this case provided, amongst other things, that the stock was to be transferred to and registered in the names of the trustees upon the books of the company, and they were to receive and hold a certificate or certificates therefor in their own names; that the trustees were to issue to each stockholder signing the agreement and depositing his stock, a certificate to that effect, which certificate should set forth the number of shares so deposited, be assignable by endorsement and delivery and substantially in the form therein set out; that the trustees were to collect and receive the dividends and to distribute them to the registered holders of the voting trust certificates; that they were to vote the stock deposited at all meetings of the corporation and for all purposes; that the trust should continue for a period of three years from the date of the agreement; that upon the expiration of the three years, or when for any reason the agreement was terminable, they were to re-transfer and deliver the shares of stock to the holders of the voting trust certificates; that the trustees were to be held personally responsible only for the failure to use good faith in the performance of their duties and that the agreement should be terminated at any time by the action of any two of the trustees, or by the vote of the holders of the voting trust certificates representing at least seventy-five per cent. of all the shares deposited.

It will be seen by reference to it that our statute provides that a stockholder may transfer his stock to any person or persons "for the purpose of vesting in him or them the right to vote thereon, for a time not exceeding five years," and that the statute does not even speak of them as trustees, but as "transferee or transferees." The certificates to be issued to the stockholders by the trustees begin by saying: "This is to certify that * * * * is the owner of * * * shares of the capital stock of the Commerce Trust Company," etc. They are assignable by endorsement and delivery, and on the back there is a form similar to the one for assigning shares of stock.

These voting trustees have no power to sell the stock, and only hold it for three years, if not sooner terminated, and when terminated they are to retransfer and deliver the shares to the holders of the voting trust certificates. The original shareholders not only have the beneficial interest in the shares, but they have the certificate issued by the trustees, which they can sell or use as they please. The certificates can be transferred just as the original certificates could be, excepting they are transferable on the books of the voting trustees, instead of on those of the company. It is a wholly different trust from such as was being considered in *Latrobe* v. *Baltimore,* 19 Md. 13; *Baltimore* v. *Stirling,* 29 Md. 48; and other cases of similar kind. Even in speaking of that kind of trust, this Court, through JUDGE SCHMUCKER, said in *Baltimore* v. *Safe Deposit Co.,* 97 Md. 659, that "when property is held in trust, there are two persons each of whom is in a certain sense its owner. The trustee who holds the title is the owner in a legal and technical sense, but the *cestui que trust* is the beneficial and substantial owner." The court was then construing the Act of 1902, Chapter 486, which is now Section 215 of Article 81, which provides that "all bonds * * * and all personal property of any kind whatsoever, not exempt from taxation by the laws of this State, in which any resident of any county of this State has an equitable interest, with legal title to the same in some other person or corporation who is a resident

of some other county of this State or of the City of Baltimore, or (in the case of a corporation) which has its main office or principal place of business in some other county in this State or in the City of Baltimore shall be valued and assessed for the purposes of State and county taxation to the equitable owner thereof in the county in which he or she resides," etc. It was held in the case last cited that the situs for taxation of shares of stock of the *Phila., W. & B. R. R. Co.* held by the Safe Deposit Company of Baltimore in trust for Emily R. Hoff, who was a resident of Baltimore County, was the residence of the *cestui que trust.* There does not, therefore, seem to be much room for controversy in reference to the shares of stock which belong to residents of Maryland, which were transferred to the voting trustees, in view of that statute and the decision of this Court above referred to. That shares of stock are personal property of the respective owners for the purposes of taxation cannot be questioned. *Baltimore v. Allegany County,* 99 Md. 1. There was then error in the order of the lower court, at least in reference to the shares of stock in the voting trust, which belonged to residents of Maryland—being something over six thousand shares.

But we are of the opinion that the State Tax Commission was correct as to all the shares held by the voting trustees. It is true that neither Section 2 nor Section 162, which provide that shares of stock shall be assessed to the owners of shares of stock in the county or city where they reside, say who shall be regarded as the "owner" as between a trustee and his *cestui que trust,* but it is manifest that the object of the Legislature was to give the counties and municipalities the benefit of the taxation of the shares of stock to the extent that they were enjoyed by residents of the respective counties and municipalities. The general principle that when property is held by trustees they shall pay the tax was recognized in this State, and it resulted in determining the situs for taxation in *Latrobe's case,* on the theory that, as the trustee was the holder of the legal title, he was the holder of the property who was called upon to pay the tax under the Fifteenth Arti-

cle of the Bill of Rights. But as pointed out by JUDGE SCHMUCKER in *Baltimore* v. *Safe Deposit Co., supra*, when the question came before the court in *Tyson* v. *State*, 28 Md. 587, the decision in *Latrobe's case* was construed to have determined only "that in the absence of any law regulating the imposition and collection of taxes, the trustee holding the legal title was properly chargeable with the tax." In Section 2 of Article 81, there is also a provision that all personal property in which any resident of this State has an equitable interest, with the legal title to the same in some person or corporation who is a non-resident, shall be valued and assessed to the equitable owner in the county or city in which he, she or it resides. In *Baltimore* v. *Allegeny County*, 99 Md. 1, JUDGE PEARCE said that the policy as to personal property in this State "is a recognition of the fundamental principle that taxes are paid in return for the protection and services of government, from which it results that local taxes upon personal property, not permanently located elsewhere, should be rendered to the local government, which gives protection and renders services to the person, and to the personal property which follows his domicile." As pertinent illustrations of the application of these principles and of the policy of the law, as declared in *American Coal Co.* v. *Allegany County*, 59 Md. 193, JUDGE PEARCE cited *Bonaparte* v. *Baltimore*, 63 Md. 465; *Baldwin* v. *Washington County*, 85 Md. 156, and *Baltimore* v. *Safe Deposit Co., supra*.

Now when the corporation pays the tax on shares of stock and then charges the stockholders with it—really acting as collector—there is no more danger, if as much, of losing any of the taxes, because assessed to the *cestui que trust*, instead of to the trustee, in ordinary cases of trust, and in case of such a voting trust as we have before us, the real owner is the original stockholder, or his assignee of the certificate. We have been referred to no case directly on the question here involved, but that of *U. S. Ind. Tel. Co.* v. *O'Grady*, 75 N. J. Eq. 301, 71 Atl. Rep. 1040, seems to be very relevant. Under a statute of New Jersey, stockholders or creditors of a cor-

poration could institute a proceeding for the winding up of the corporation, if insolvent, and the question raised was whether the owner of a voting trust certificate was a stockholder within the meaning of this statute. The Court of Appeals and Errors of New Jersey said through CHIEF JUSTICE GUMMERE that he was, and, in speaking of the title held by the voting trustees, said: "Their very designation shows that they hold it, not in their own right, but for those for whose benefit the trust was created, viz: their *cestui que trusts*, and these persons are conclusively designated by the trust certificates issued by the voting trustees * * *. The voting trustees have no interest in the stock beyond what is necessary to enable them to execute their trust. The beneficial owners of the stock are the persons who hold the certificates issued by the voting trustees, and those persons are the stockholders who are entitled to maintain the suit, provided by the sixty-ninth section of the Corporation Act."

There are many reasons why the appointment of voting trustees should not have the effect held by the lower court. There is danger of stockholders selecting such trustees with reference to taxation in a particular county. It is not an unheard of thing for people to change their residences by reason of the taxable basis being lower in the county to which they move than where they had been living, and if stockholders of a corporation can change the situs of taxation by the selection of a trustee or trustees in a voting trust, the probabilities are that it will be done for the purpose of getting lower taxes. Then it is not right that the stockholder should still have all the rights he ever had in shares of stock, except to vote, and not pay the taxes where he lives but receive the protection of the local government. Other reasons might be given, but the fundamental one on which we rely is that, as between such a trustee and the stockholders who unite in naming him in a voting trust, the stockholder should be regarded and treated, for the purposes of taxation, as the owner, and his residence should determine the situs of his shares of stock. The policy of this State, as shown by some

statutes which have been passed and by our decisions, as well as the justice and right of the matter, fully justify us in that conclusion. If voting trust agreements can affect and control such questions as the situs of the property for the purposes of taxation, there would probably be renewed opposition to such trusts.

As we referred above more specifically to shares in the voting trust which belonged to residents, it may be well to add that we are equally convinced that the State Tax Commission was correct as to all held by the voting trustees. Our conclusion is that, as the owners of the certificates issued by those trustees are the real and substantial owners of the shares, and not the voting trustees, within the meaning of the tax laws, the term "owners," as used in Section 162 of Article 81, and other sections, is equally as applicable to non-resident holders of the certificates as to resident holders, and hence the provision in Section 162, that the shares of stock held by non-residents shall for county and municipal purposes be valued to the owners thereof in the county or city in which the corporation is situated, must be held to mean the non-resident holders of these certificates issued by the voting trustees.

It follows that the order of the lower court must be reversed.

*Order reversed, the appellee to pay the costs.*