No. 26,482.

THE SECURITY NATIONAL BANK, *Appellant*, v. A. W. WEST, *Appellee*.

SYLLABUS BY THE COURT.

1. BILLS AND NOTES—*Conditional Delivery—Oral Agreement.* An oral agreement entered into at the time of the execution of a promissory note that it is not to be enforced according to its terms does not result in a conditional delivery or a delivery for a special purpose only, and is prevented by the parol evidence rule from being successfully interposed as a defense.

2. SAME—*Genuineness of Signature—Special Findings.* The issue of the genuineness of the signature to a note is held to have been settled by a special finding, notwithstanding errors in relation to other matters.

3. SAME—*Accommodation Paper.* The issue remaining to be determined is held to be whether a note in controversy was given by the defendant to a bank for the purpose of lending his credit to the bank president personally.

4. TRIAL—*Control of Cross-examination.* The cross-examination of the adverse party is held to have been unduly restricted.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion filed March 6, 1926. Reversed.

*C. H. Brooks, Willard Brooks, Howard T. Fleeson* and *William H. Hitchcock,* all of Wichita, for the appellant.

*H. W. Hart* and *Glenn Porter,* both of Wichita, for the appellee.

The opinion of the court was delivered by

MASON, J.: The Security National Bank, of Arkansas City, brought this action against A. W. West upon a note for $4,000, dated September 11, 1922, signed by him, and payable to its order. A jury trial resulted in a judgment for the defendant, and the plaintiff appeals.

The following three paragraphs, here designated for convenience (*a*), (*b*) and (*c*), constitute the substance of the allegations of the answer, so far as they affect the questions to be here considered:

(*a*) The note sued on was signed by the defendant upon the representation of the bank that he owed it $4,000 upon two notes for $2,000 each, one dated December 9, 1921, the other August 23, 1921. The bank at the time presented the August note and returned it to him, he believing he had signed it. It was, however, a forgery, which he had never signed and for which he received no consideration.

Appeal and Error, 4 C. J. pp. 1194 n. 86, 1201 n. 42. Bills and Notes, 8 C. J. pp. 263 n. 67, 511 n. 91, 740 n. 86; L. R. A. 1917C, 306; 20 A. L. R. 440; 3 R. C. L. 862. Witnesses, 40 Cyc. pp. 2488 n. 87, 2512 n. 43.

(b) The defendant received no consideration for the December note. He had had several thousand dollars on deposit in the bank, which through its president, Wm. M. Stryker, it had lent to Stryker and others. The bank represented to the defendant that it would pay this December note from the money lent to Stryker and this note was delivered only upon the condition that it would be paid in that way.

(c) When the $4,000 note was signed the bank through Stryker agreed that, if it should turn out that the August note for $2,000 was a forgery, the $4,000 note, which was left with Stryker, should not be delivered to the bank, but should be returned to the defendant. The note was delivered in violation of this agreement. The defendant received no consideration for it.

Stryker has been convicted of embezzlement and forgery. (State v. Stryker, 118 Kan. 620, 236 Pac. 849.) The bank has been reorganized and is under a new management. Stryker was not a witness, and the plaintiff produced little evidence showing the nature of the transactions between the bank, its president and the defendant, outside of its records, not all of which were available, the loss of a part of them being shown. The defendant's testimony indicates that his ideas on the subject are somewhat confused. The evidence tended to show these facts:

On August 10, 1918, the defendant deposited $4,959.15 in the bank, receiving four certificates of deposit, bearing four per cent interest, which were made payable to and were indorsed by Stryker. He put the money in Stryker's name so his wife wouldn't get it. On July 8, 1919, these certificates were replaced by others of the same kind, the interest with an addition in cash bringing the amount up to $8,635.25. On May 18, 1920, these certificates were surrendered and canceled and in lieu of them their total amount, with a cash addition sufficient to bring it up to $9,000, was entered as a deposit in the name of "Stryker, Trustee," the name "West" being written opposite the entry in the deposit ledger sheet. The defendant was given no writing evidencing the deposit until March 25, 1921, when Stryker gave him an assignment of the deposit slip, with a statement of account showing a payment of $2,000 and a computation of interest at seven per cent, bringing the balance to $7,576.50. Stryker at times not shown drew out all the money, and presumably used it for his own purposes. On September 2, 1922, he rendered a statement showing $2,000 paid to the defendant August 23, 1921,

and $3,600 December 9, 1921, with a balance of $2,414.71 after adding interest to August 29, 1922. A like account was rendered to the defendant, with interest added to December 9, 1922, the balance being $2,414.71.

1. After quoting in full the section of the negotiable instrument act relating to delivery (R. S. 52-216), providing that as between the immediate parties the delivery of a note may be shown to have been conditional, or for a specific purpose only, the trial court instructed the jury that a verdict should be returned for the defendant if the note sued upon was delivered on condition the $2,000 note of August 23, 1921, should be found to be genuine, or upon any other condition (that had not been performed). Complaint is made of this instruction. The answer, in the paragraph here designated as (c), alleged that the $4,000 note was to be returned if the $2,000 referred to turned out to be a forgery, but we find no evidence to that effect and hold the instruction to have been erroneous on that account. The answer also alleged—paragraph (b)—that the $2,000 note of December 9, 1921, was delivered upon condition that the bank would pay it from the money lent to Stryker. The defendant gave testimony with regard to the $4,000 note apparently in support of a claim similar to that just referred to which was pleaded with regard to the $2,000 note. He testified:

"At the time the $4,000 note was signed, it was said that it should be returned to me on my sending the deposit slip, and if I didn't send him the slip, he was to send me, I believe, about $4,600. I did send him the deposit slip. I never authorized him to give this note to the bank until I got the money, which I never got."

He also said:

"My understanding as to the payment of the note of December 9, 1921, was that Stryker was to send me the money, and he never done it."

The delivery of a note with an oral agreement that it is not to be enforced according to its terms is not a conditional delivery in such sense as to constitute a defense to its enforcement. It is an ineffective attempt to contradict the terms of a written contract by parol. (Bank v. Pirotte, 107 Kan. 573, 193 Pac. 327.) A different view has sometimes been taken (Paulson v. Boyd, 137 Wis. 241; Martineau v. Hanson, 47 Utah, 549), but this is in accordance with the weight of authority, and as we think with the better reason. (See dissenting opinions in the Wisconsin case cited; Brannan's

Negotiable Instrument Law, 3d ed., 61; notes, L. R. A. 1917C 312-313; 20 A. L. R. 440, 442, 490.)

2. It follows from these conclusions that the plaintiff was entitled to recover the amount of the $4,000 note unless some defense was shown to one or both of the notes of which it is claimed to have been a renewal.

With reference to the note of August 23, 1921, the direct issue of forgery was presented. The defendant testified that he did not sign it. Two witnesses thought the signature his, and one was of the contrary opinion. The jury in answer to a special question found in his favor on this issue and the court approved the finding. This matter is not affected by rulings concerning other features of the case. As to half its amount the $4,000 note is therefore unenforcible since it, to that extent, is based upon a note found to have been a nullity.

3. The enforcibility of the note to the extent of the other $2,000 depends upon the conclusions of fact to be drawn from the evidence and presents a question which will require to be resubmitted to the trial court.

One theory to account for the giving of the two $2,000 notes (treating both for the moment as genuine) would be that the defendant called upon Stryker for the return of more money than he had available at the time, and at Stryker's suggestion his needs were met by the bank on two occasions lending him $2,000 and taking his note. This theory, however, is contradicted by the fact that the $2,000 which the defendant received from the bank on the date of the first note was charged by Stryker against the defendant as paid by himself. And Stryker's statement shows that at the time of the execution of the second note he paid the defendant $3,-600, which presumably included the $2,000 represented by the second note for that amount. It seems quite clear from this that what money the defendant received on the dates of the notes is to be regarded as coming from Stryker and not from the bank.

The plaintiff's theory is that Stryker, in each instance, in order to obtain $2,000 to pay the defendant on account, induced the defendant to give the bank a note for $2,000 as an accommodation to Stryker, who used it to obtain from the bank that amount, which he then paid to the defendant on account. If the facts are found in accordance with this theory the defendant is liable, notwithstand-

ing he received nothing for the note, and the bank knew it. The bank, having parted with its money for the note, would be a holder for value with knowledge that the note was given for the accommodation of Stryker, and therefore entitled to enforce payment. (R. S. 52-306; 8 C. J. 263.)

The want of consideration, however, is a defense if the defendant signed the note otherwise than as an accommodation to Stryker. There is nothing in the record to indicate or even suggest that he gave the note as a means of deceiving the inspectors as to the condition of the bank.

4. Complaint is also made of the sustaining of objections to a number of questions asked of the defendant on cross-examination. The trial court has of course a wide discretion in such matters, but some of the questions asked seem of the kind to which an answer should have been required. For instance, the defendant, having testified in chief to his relations with the bank and Stryker with respect to his deposit, was asked on cross-examination if his understanding was that his money in the bank was invested and bringing in six per cent interest, and how he expected it was going to earn six or seven per cent interest if it was left in the bank idle. That seems a fair question to test the good faith of the defendant's story.

The refusal of the plaintiff's motion for an adjournment of the taking of evidence until a later hour in order that the plaintiff might procure the testimony of Stryker is assigned as error, but as a reversal is to be ordered on other grounds the point is not now material.

The judgment is reversed and the cause remanded for a new trial upon the question whether the defendant is liable to the extent of the $2,000 note of December 9, 1921, his nonliability further than that to be regarded as finally adjudicated.