Argued March 22; affirmed April 10, 1934

SMITH *v.* BRAMWELL ET AL.

(31 P. (2d) 647)

*Howard P. Arnest,* of Portland (D. V. Kuykendall, of Klamath Falls, on the brief), for appellant.

*Omar C. Spencer,* of Portland (Mark Norris, of Grand Rapids, Mich., and Carey, Hart, Spencer & McCulloch, of Portland, on the brief), for respondents

Earl B. Tanner, John W. Blodgett, John W. Blodgett, Jr., Blodgett Company, Limited, and Algernon Cyrus Dixon.

*Robert F. Maguire,* of Portland, for respondent Frank J. Cobbs.

*Bronaugh, Hamilton, Bynon & Bronaugh,* of Portland, for respondents Earl C. Bronaugh and Alva H. Averill.

*Allen H. McCurtain,* of Portland, for respondent Frank C. Bramwell.

BELT, J. This is an action by a stockholder in the American Bancorporation to recover $255,840 general damages and $100,000 punitive damages from the defendants—who are also stockholders and officers in the above corporation—on account of an alleged conspiracy resulting in depreciation of value of plaintiff's stock. After setting forth the history and structure of the American Bancorporation and of its subsidiary corporations in which plaintiff was interested, it is alleged in the complaint that the voting stock of the American Bancorporation was transferred to certain trustees, under a voting trust agreement, for the purpose of perpetuating the business of the corporation, securing efficient management thereof, and protecting the company against improvident issues and sale of its stock. Plaintiff then alleges that this voting trust agreement was a part of a "preconceived plan and scheme" on the part of certain of the defendants to dominate the board of directors of the corporation and to "serve as the nucleus for the combination and conspiracy" (1) to liquidate the assets of the Lumbermens Securities Corporation (a subsidiary of the American

Bancorporation), including the sale of its stock in Oregon-Washington Joint Stock Land Bank, and retire the Lumbermens Securities Corporation from the investment securities field; (2) to liquidate Lumbermens Trust Company and reduce its business to that of administering trusts; (3) to cause the American Bancorporation to sell its stock in American Exchange Bank and Bank of Central Oregon; (4) to bring about and effect the liquidation of the American Bancorporation—all for the enrichment of the defendants and against the best interests of the corporation.

Plaintiff alleges that in furtherance of this conspiracy the defendants committed certain wrongful acts which in substance are set forth in the complaint, viz:

(1) Dominated the directorate of the Lumbermens Securities Corporation bringing about a liquidation of the company and its retirement from the investment field;

(2) Dominated the directorate of the Lumbermens Trust Company and caused the company to discontinue all business except the administration of trusts;

(3) Dominated the directorate of the American Exchange Bank and caused the American Bancorporation to sell its stock in said bank;

(4) Caused American Bancorporation to sell its stock in the Bank of Central Oregon;

(5) After having determined upon the liquidation of the American Bancorporation, they refused to permit plaintiff, who was the largest stockholder in the corporation, to make advantageous sales of its assets;

(6) In selling stock of the American Exchange Bank they disregarded plaintiff's offer of assistance, refused to consider an advantageous offer, finally sold the stock at a lower figure than could have been secured and then lost the proceeds of the sale;

(7) They refused to notify plaintiff of meetings of the trustees, brought about his resignation but failed to notify the stockholders thereof; and permitted one trustee to become an officer of a bank owned by the company with which the negotiations for sale were being carried on;

(8) They attempted to conceal information from stockholders;

(9) They gave no notice to the stockholders of the sale of certain assets nor of the abandonment of certain enterprises;

(10) They made an improvident contract of sale of its stock in the American Exchange Bank and Bank of Central Oregon;

(11) Caused the Lumbermens Securities Corporation to make an improvident sale of its stock in Oregon-Washington Joint Stock Land Bank;

(12) Caused the directors of the American Bancorporation to consent to a receivership and the appointment by the federal court of a receiver whom they could influence and dominate in their plan of liquidation.

Plaintiff alleges that, as a result of the above conspiracy and the acts performed in furtherance thereof, his stock in the American Bancorporation became worthless to his damage in the amount above mentioned.

The various defendants answered denying generally the allegations of the complaint and alleged affirmatively that the action was not commenced within the time provided by statute.

At the commencement of the trial, the trial court sustained an objection of the defendants to the introduction of any testimony for the reason that the complaint failed to allege facts sufficient to constitute a cause of action. Thereupon, the plaintiff made application to amend the complaint by adding certain

allegations relative to the voting trust agreement and setting forth copies thereof to be attached as a part of the pleading. The motion to amend was denied as the court was of the opinion that such allegations did not materially strengthen the cause of action as alleged in the complaint. From an order dismissing the cause of action the plaintiff appeals.

 The gravamen of the complaint is that the defendants, pursuant to a conspiracy, committed certain wrongful acts resulting in an injury to the corporation. Yet the plaintiff sues, not on behalf of the corporation but in an individual capacity. If plaintiff's allegations were true, undoubtedly he would sustain damage, but not more so than any other stockholder in proportion to his interest in the company. If plaintiff can maintain this action, then every other stockholder can do so. The proximate cause of plaintiff's loss was the alleged wrongful acts of the officers of the corporation who dissipated its assets and appropriated the same to their own use and benefit. It is observed that the wrongs of which plaintiff complains, with a few inconsequential exceptions, were corporate acts and could be accomplished only through the action of the board of directors.

It is a well-established general rule that a stockholder of a corporation has no personal right of action against directors or officers who have defrauded or mismanaged it and thus affected the value of his stock. The wrong is against the corporation and the cause of action belongs to it. Any judgment obtained by reason of such wrongs is an asset of the corporation which inures first to the benefit of creditors and secondly to stockholders: *Bartlett v. New York, N. H. & H. R. Co.,* 221 Mass. 530 (109 N. E. 452); *Curtiss*

*et al. v. Wilmarth et al.,* 254 Mich. 242 (236 N. W. 773);
*Niles v. New York Cent. & H. R. R. Co.,* 176 N. Y. 119
(68 N. E. 142); *Lukach v. Blair,* 108 Misc. 20 (178 N.
Y. S. 8); 4 Cook on Corporations (8th Ed.), p. 3187.
Appellant recognizes the rule as above stated, but
asserts that it has no application to the particular facts
involved in this case. Plaintiff contends that his action
is based upon a violation of the voting trust agreement
and that, by virtue of such contractual relationship, he
may maintain the action in his own behalf even though
there was a direct damage to the corporation. At this
juncture it is well to determine his legal status as a
holder of the voting trust certificate. Notwithstanding
plaintiff had transferred the legal title to his stock to
the trustees, he still was the beneficial owner of the
same. The trustees had no interest in the stock other
than to vote it in keeping with the purpose of the trust
agreement. Under the terms of this agreement, the
trustees were bound to vote the stock to ''insure the
management of the business and affairs of said 'Ore-
gon Bancorporation' (later changed to American Ban-
corporation) in a safe and conservative manner,
thereby promoting the business interest of said corpo-
ration and the *best interest of all of the stockholders of
said corporation''.* In view of the purpose and spirit
of this voting trust agreement and the duty and legal
obligations of the trustees thereunder, we are at a loss
to see wherein the plaintiff would sustain a loss sepa-
rate and distinct from that of other stockholders in the
event of a breach of the trust. He still, to all intents
and purposes, is a stockholder except that he has no
personal right to vote his stock: *Chandler v. Bellanca
Aircraft Corporation* (Del.), 162 Atl. 63; *O'Grady v.
United States Independent Telephone Co.,* 75 N. J. Eq.

301 (71 Atl. 1040, 21 L. R. A. (N. S.) 732); *John W. Cooney Co. v. Arlington Hotel Co.,* 11 Del. Ch. 286 (101 Atl. 879); *State Tax Commission v. Commissioners of Baltimore County,* 138 Md. 668 (114 Atl. 717).

In view of the status of plaintiff as a holder of a voting trust certificate, it seems clear that his rights are governed by the same legal principles applicable to any stockholder who seeks to recover damages in cases wherein officers or directors of a corporation conspire to wreck it for the purpose of their own enrichment. *Brock v. Poor,* 216 N. Y. 387 (111 N. E. 229), is in point and strongly supports the contention of the defendants that this is a derivative action and must be maintained by plaintiff, if at all, in a representative capacity. In the case cited, the plaintiff therein, a voting trust certificate holder, brought suit against the voting trustees and the corporation, seeking (1) to set aside the transfer of his stock to the trustees, (2) an accounting from the trustees of funds alleged to have been misappropriated by them, and (3) the appointment of a receiver of the corporation. The trustees were charged with having "misappropriated to their individual ownership and use a large amount of corporate assets". The court of appeals held that the action could be brought only in the right of the corporation and that therefore the demurrer to the complaint on the ground of misjoinder of causes of action should be sustained. The court, in referring to the allegations of the complaint, said:

"* * * It seems to me very clear that they do thus set forth what under ordinary circumstances would be a cause of action in favor of said corporation.

"These allegations, as has already been pointed out, are to the effect that the individual defendants

fraudulently have taken away from the Anthony & Scovill Company, which they controlled, and have misappropriated to their individual ownership and use a large amount of corporate assets. They are full and complete in their assertion of an assault by the individual defendants upon the rights of the corporation. They form the bulk of the pleading. They set forth the foundation of all the complaints against the defendants—that they are misappropriating corporate property.

\* \* \* \* \*

"Such being the character of these allegations, the rule is so well settled as to require no citation of authorities that under any ordinary circumstances the fraud of the officers or managers of a corporation whereby its assets are misappropriated must be redressed by an action brought by the corporation to whom the assets belonged or by a stockholder derivatively in behalf of the corporation.

\* \* \* \* \*

"Much is also said to the effect that the individual defendants were trustees, and that trustees will not be allowed to make a secret profit, as will be the case if these defendants are allowed to misappropriate and retain for their own benefit assets which belong to the corporation. Of course, this is true, but the question still remains unanswered by this theory whether the remedy for misappropriation of corporate assets is to be sought by or in behalf of the corporation which has been injured or by one who was or is a stockholder therein."

We cannot agree that the instant action is predicated upon a breach of the voting trust agreement. Some of the defendants were not parties to this trust agreement. When confronted at the commencement of the trial by the objection to the introduction of any testimony for the reason that the complaint failed to allege a cause of action, the plaintiff undertook to bring himself within the exception to the general rule,

relative to actions by stockholders against officers of a corporation, by showing a contractual relationship under the voting trust agreement. But, as we have endeavored to show, a breach of this voting agreement did not confer upon the plaintiff a right to an individual and direct action, as distinguished from a derivative one, as any loss sustained by plaintiff by reason of the breach was, under the facts alleged, common to all stockholders.

Much reliance is had by plaintiff on the leading case of *Ritchie v. McMullen,* 79 Fed. 522, but we think that is not applicable to the facts alleged in this case. Ritchie, who became financially involved, pledged a large block of stock in various corporations with Payne, Burke, and Cornell, as collateral security in consideration of the agreement of these pledgees to aid him in the development of mining properties of the corporations, to extend financial credit, and to assist him in the consolidation of certain corporations. Ritchie alleged a breach of this contract and that Payne, Burke, and Cornell entered into a conspiracy to dominate the corporations in which he was interested as a stockholder and so manage the same that they would acquire title to the pledged stock. The court held that, if these charges were established, Ritchie would be entitled to recover on account of depreciation in value of his stock. It was further held that the general rule relative to liability of officers of a corporation did not apply, but that "where the wrongful acts are not only wrongs against the corporation, but are also violations by the wrongdoer of a duty arising from contract or otherwise, and owing directly by him to the stockholders" an individual action could be maintained. It must be apparent that

in this case the damages sustained by Ritchie were separate and distinct from those resulting to the other stockholders. Furthermore, they arose out of the breach of contractual obligations wholly dissimilar to those involved here.

We find no case cited by appellant which upholds the contention that for the corporate wrongs involved in this case the injured stockholder can maintain an action in his individual capacity. The cause of action, if any exists, belongs to the corporation.

The decree of the lower court is affirmed.

RAND, C. J., ROSSMAN and KELLY, JJ., concur.