Argued June 14; affirmed September 18, 1934

# DANT & RUSSELL, INC., *v.* OSTLIND

(35 P. (2d) 668)

*Joseph A. McKeown,* of Marshfield (Liljeqvist, Swanton & Slack, of Marshfield, on the brief), for appellant.

*John J. Beckman,* of Portland, for respondent.

BAILEY, J. This action was instituted by the plaintiff against the defendant to recover the sum of $50,000 on a promissory note dated February 1, 1929, payable three years after date, with interest at the rate of six per cent per annum. From judgment in favor of the plaintiff for the full amount of the note, with interest and attorney's fees, the defendant appeals.

The assignments of error relied upon by defendant on this appeal are directed principally to the ruling of the trial judge in sustaining demurrers to the three separate defenses, and to the sufficiency of the complaint, a question raised in this court for the first time. It is therefore necessary to set out in some detail the allegations of the pleadings.

The complaint alleges the corporate existence of the plaintiff and that the defendant, for a valuable consideration, made, executed and delivered to the plaintiff the note in question, setting forth a copy thereof *in haec verba.* It further avers that the note is due and owing; that demand has been made for its pay-

ment; and that it has not been paid, in full or in part. The complaint, however, does not definitely allege that the plaintiff is still the owner and holder of said note.

The answer admits plaintiff's corporate existence, and that the defendant signed an instrument in writing substantially as set forth in the complaint, but denies that the note was signed on the date it bears and that it was given for value received. Defendant further denies that the note was executed or delivered to the plaintiff, and alleges that the instrument was signed by defendant on or about April 25, 1929, and "that the same was without consideration or for any value received by the defendant". The answer further avers that the note was never delivered to the plaintiff.

The first affirmative defense alleges that in 1928 stockholders of Western White Cedar Company, Coos Veneer & Box Company and Pacific Veneer Company, all corporations doing business in Coos county, Oregon, effected a merger of the assets, liabilities and businesses of the three corporations named, by the surrender of all their capital stock to a new organization, Port Orford Cedar Products Company, hereinafter referred to as the products company, and received in exchange therefor shares of capital stock in the new company in proportion to the value of the assets surrendered.

At the time of the merger the plaintiff was a creditor of Coos Veneer & Box Company in the sum of approximately $150,000, evidenced by a note secured by mortgage on the physical assets of the debtor. The plaintiff was also a creditor of Western White Cedar Company and owned stock in the Pacific Veneer Company. C. E. Dant and Charles S. Russell were directors and officers of Dant & Russell, Inc., and managed and controlled that corporation. They, as well as Dant &

Russell, Inc., cooperated with the stockholders, including the defendant, of the corporations which were merged, in promoting and effecting the merger.

On or about August 1, 1928, the products company was organized. Mr. Russell was elected a member of its board of directors and remained a director until after the execution of the note involved in this litigation.

Capital stock in the newly organized corporation in the amount of 1,500 shares of the par value of $150,000 was delivered to the plaintiff, Dant & Russell, Inc., in payment of the indebtedness of Coos Veneer & Box Company. Later the capital stock of the new corporation was appreciated by the declaration of a stock dividend and the plaintiff received 3,796 shares of its stock in lieu of the 1,500 shares above mentioned.

The defendant owned stock in, and controlled, the Coos Veneer & Box Company, and as an inducement to him to consent to the merger and become a stockholder in the products company, it was agreed between the plaintiff, Dant & Russell, Inc., the directors of the products company and the defendant that it would be to the best interest of the new corporation and its stockholders for the defendant to be made manager of the products company. And as a further inducement to defendant to cooperate in the merger the plaintiff agreed to carry for him 500 shares of stock of original issue of the products company, of the par value of $100 per share, which after the stock appreciated became 1,265 shares. It was understood, defendant avers, that he would pay for the stock from dividends earned on it; that he had no other means of paying for it; and that upon full payment the plaintiff would turn over the stock to him and it would become his property.

Pursuant to such oral agreement the plaintiff forwarded to the secretary of the products company its certificate for 3,796 shares of the common stock of that company "for the purpose of having the shares represented thereby split up and issued in two different certificates". The secretary, upon receipt of this certificate, canceled the same and issued one in the name of the defendant for 1,265 shares, "which was at all times owned and retained by the plaintiff", and another in the name of the plaintiff for 2,531 shares.

With reference to the alleged understanding, the defendant avers:

"That for the purpose of carrying out the said agreement * * * said plaintiff caused the secretary of said Port Orford Cedar Products Company to secure the endorsement in blank upon the back of said stock certificate No. 347 for 1,265 shares, * * * and this defendant did so pursuant to said oral understanding and agreement and not otherwise, endorse said certificate * * * and as a part of said agreement and for the purpose of carrying out the terms thereof, said defendant affixed his signature to a written instrument evidencing the value of said stock, a substantially true copy of which is set forth in paragraph number II of plaintiff's complaint; that it was orally understood and agreed between plaintiff and defendant that said instrument should not be delivered to the plaintiff as a completed instrument or as the property of the plaintiff, or for the purpose of transferring the property in the instrument, but that said instrument should be held by the plaintiff together with said certificate of stock * * * for the defendant, and it was then and there orally understood that said instrument was to be kept by the plaintiff for the special purpose of holding said instrument together with said certificate * * * by the plaintiff until the sum mentioned in said instrument, together with interest as therein stated should be paid from the earnings and dividends declared by said Port Orford Cedar Products Com-

pany from said stock and that the plaintiff should likewise hold said certificate of stock No. 347 until said full sum specified in said instrument * * * should be paid in full from such earnings and dividends and when the sums stated in said instrument had been received by the plaintiff from such earnings and dividends that said instrument should be returned to the defendant, and plaintiff should deliver said stock to the defendant, who upon such delivery should become the owner thereof; and pursuant to such oral agreement between the plaintiff and defendant, defendant alleges that said instrument set forth in plaintiff's complaint was conditionally delivered to the said plaintiff, and for such special purpose only, and not for the purpose of transferring the property in the instrument, and said stock certificate No. 347 was never delivered to defendant but the possession, control and ownership of said stock was at all times and still is retained and kept by said plaintiff and said certificate No. 347 was returned by the secretary of said Port Orford Cedar Products Company * * * to the plaintiff, and it was then and there orally agreed between the plaintiff and defendant that said instrument referred to in plaintiff's complaint was not to be otherwise paid for except out of said dividends on said stock.''

The remaining allegations in the first affirmative defense are to the effect that defendant relied on the oral agreement hereinbefore referred to, and would not have signed the note or endorsed the stock certificate, were it not for the understanding so had.

The second affirmative defense ''adopts and realleges'' all the averments of the first affirmative defense, and further alleges that upon the completion of the merger the products company issued a mortgage in the sum of $2,500,000, covering all its assets, to Continental Illinois Bank & Trust Company, an Illinois corporation, and one Calvin Fentress, as trustees.

The defendant avers that as soon as the merger was completed he entered upon the discharge of his duties as manager of plant operations and duly performed all conditions on his part to be performed; that shortly thereafter the plaintiff "confederated and conspired" with Carl L. Seitz and C. E. Dant, who were officers and directors of the plaintiff corporation, and with other individuals, "to cheat and defraud this defendant and to deprive him and various other stockholders of all interest in said" products company; and that the plaintiff and the said conspirators secured control of the capital stock of the products company and proceeded to discharge "skilled assistants and employes" operating under the management of this defendant, and did thereupon, on June 1, 1929, terminate defendant's employment as manager of plant operations.

Defendant further alleges that through such conspiracy the plaintiff caused Seitz to be elected a director of the products company and also caused him to be elected chairman of the board of directors of that corporation and to remain as such chairman until September 24, 1931, when it supplanted him with one Henry F. Chaney, who was also one of the conspirators. The products company then had outstanding a total of 58,239 shares of stock, of which amount 31,139 shares were controlled by Seitz.

Through the alleged conspiracy, according to the defendant, the mortgage on the holdings of the products company became delinquent and the property of that company was put in jeopardy.

The remainder of the second affirmative defense recites in detail the specific acts of the alleged conspirators, including an attempt on their part to render worthless the shares of minority stockholders, the

institution of the suit to foreclose the mortgage on the property of the products company, and other acts not necessary here to mention. This part of the answer concludes with the averment that through such alleged wrongful and unlawful acts of the plaintiff and other conspirators, the plaintiff "has rendered impossible of performance the conditions under which said instrument should be paid by dividends from earnings on such stock as aforesaid, and the conditions precedent under which said instrument would become effective have not been performed by plaintiff or at all, by reason of the acts of the plaintiff, and plaintiff has entirely breached and violated all the covenants to be performed by it".

The third affirmative defense and counterclaim "adopts and realleges" all the allegations of the two prior affirmative defenses and further avers that by reason of the "conspiracy and fraudulent acts and conduct of the plaintiff and said conspirators" the performance of defendant's agreement to pay the $50,000 from earnings of the corporation has been rendered impossible; and that through such acts the plaintiff has breached its contract with the defendant and has caused the defendant to suffer damages in the full sum of $50,000 "in addition to the amount of interest which would have accrued upon the said instrument in writing, and which said damages the defendant is entitled to recover from the plaintiff".

■ In order to prove certain allegations of the complaint which were denied by the defendant, the plaintiff called as a witness an employee of the plaintiff corporation, produced and identified the note and offered it in evidence. After the plaintiff rested its case the defendant moved for a nonsuit, but at no time during the proceedings in the circuit court did

the defendant question the sufficiency of the complaint. He now for the first time contends that the complaint does not state facts sufficient to constitute a cause of action, for the reason that it does not specifically allege that the plaintiff is the owner and holder of the note. This contention of the defendant must be overruled, on the authority of *Columbia Hotel Co. v. Rosenberg*, 122 Or. 675 (260 P. 235), and the opinion on the petition for rehearing in *Tillamook County Bank v. International Lumber Co.*, 106 Or. 339 (211 P. 183, 941).

In reliance upon § 57-116, Oregon Code 1930, the defendant contends that he should be permitted to introduce evidence to prove that the note in question was delivered only conditionally and for a specific purpose, and not with the intention of transferring to plaintiff the property in the instrument. That section, as far as material here, is as follows:

"Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto. As between immediate parties, * * * the delivery, in order to be effectual, must be made either by or under the authority of the party making * * * and in such case the delivery may be shown to have been conditional, or for a special purpose only, and not for the purpose of transferring the property in the instrument * * *."

In his answer the defendant admits that he signed the note and that it was delivered to the plaintiff, but contends that the delivery was conditional and for a specific purpose, and that the note was to be held by the plaintiff until there was realized a sufficient amount from the dividends of the corporation to pay the note in full, both principal and interest, whereupon the note, together with the certificate for

1,265 shares of stock, should be delivered by the plaintiff to the defendant.

In *Schine v. Johnson,* 92 Conn. 590 (103 Atl. 974, 4 A. L. R. 744), the court observed:

"The conditional delivery of a written contract necessarily implies that the delivery may become absolute and the contract obligatory, according to its terms, in case the condition precedent is performed or broken, as the case may be."

If the note here involved was delivered conditionally, as asserted by the defendant, then it must be that some event was contemplated, upon the happening or nonhappening of which the instrument would become a binding obligation. However, according to the defendant's allegations the note was delivered but was never to become a binding obligation upon defendant, as it was to be paid only out of the net profits of the products company. The condition upon which the instrument was to become a binding obligation could not in any event, according to defendant, have arisen.

We need not here concern ourselves with the question of whether or not the section of our negotiable instruments act above quoted from refers to condition subsequent as well as condition precedent. For, as has been pointed out, the fulfilment of the condition under which the note was delivered, according to the allegations of the answer, would bring about the satisfaction of the note, instead of resulting in a completed delivery thereof and rendering it a binding and valid obligation on the part of the defendant.

█ The allegations of the first affirmative defense are in effect nothing more than an adroit attempt to vary the terms of payment of a written instrument by parol evidence. There is no contention that there was

any fraud connected with the execution of the note, or that the value of the 1,265 shares of stock in the products company, pledged as security for its payment, was not, at the time the note was executed, equal to the amount of the note.

It would not have been competent for the defendant, under the facts as pleaded, to show by oral testimony that the note in question was to be paid out of a particular fund and contrary to the express terms of the instrument: *Portland National Bank v. Scott,* 20 Or. 421 (26 P. 276); *Wilson v. Wilson,* 26 Or. 251 (38 P. 185); *Bank of Freewater v. Hyett,* 137 Or. 193 (1 P. (2d) 1113); *U. S. Rubber Company v. Kimsey,* 145 Or. 73 (26 P. (2d) 565); *Johnson v. Curl,* 147 Or. 530 (33 P. (2d) 237); *Moore v. Prussing,* 165 Ill. 319 (46 N. E. 184); *Faris v. Beck,* 74 Colo. 480 (222 P. 652); *Security National Bank v. West,* 120 Kans. 434 (243 P. 1014); *International Stock Food Co. v. Beshey,* 200 Iowa 165 (204 N. W. 265); *Abbott v. Kennedy,* 133 Ark. 105 (201 S. W. 830); *Post v. Tamm,* 91 Wash. 504 (158 P. 91). See also note, 20 A. L. R. 490.

■ Although there are decisions to the effect that evidence is admissible to prove an oral agreement limiting the note to payment out of a specific fund, such holding is contrary to the great weight of authority. For this reason we have not attempted to analyze the cases cited by appellant on this subject.

■ It is the appellant's contention that the second affirmative defense sufficiently pleads facts showing a failure of consideration for the execution of the note. This argument is based upon the assumption that the note is payable only out of the dividends of the products company and that as a part of the consideration for the execution of the note the defendant was to become manager of the products company.

There was, however, no agreement as to how long the defendant was to serve as such manager, and there is no allegation as to the amount of monetary damage, if any, he suffered by reason of not continuing in that capacity.

■ The acts which are charged against the plaintiff and the officers of the products company are wrongs committed against the products company and not against the defendant; and any action for such wrongs would, of necessity, be brought in the name of the corporation: *Smith v. Bramwell,* 146 Or. 611 (31 P. (2d) 647).

The third affirmative defense incorporates and makes a part thereof all the allegations of the second affirmative defense and further alleges that by reason of the acts of the plaintiff the defendant has suffered damages in an amount equal to the sum claimed in this action by the plaintiff. Whether we consider this answer as a counterclaim, in accordance with its designation by the pleader, or in the nature of a recoupment or setoff, the same objection exists as to the sufficiency of such pleading that we have hereinbefore pointed out with reference to the second affirmative defense. The injury, if any, which was suffered by reason of the wrongful acts of the plaintiff was an injury to the corporation and to all the stockholders alike. Separate actions thereon could not be maintained by individual stockholders.

■ The facts alleged in the second and third answers did not rise out of and were not in any way connected with the contract or transaction set forth in the complaint, nor are they referable to any other contract.

It follows that the judgment appealed from should be affirmed, and it is so ordered.

RAND, C. J., and CAMPBELL and ROSSMAN, JJ., concur.