Argued October 29, 1975, affirmed in part; reversed in part and remanded with instructions March 11, petition for rehearing denied April 27, 1976

WEISS AND AULD, *Respondents,*

*v.*

NORTHWEST ACCEPTANCE CORPORATION, *Appellant.*

546 P2d 1065

[ 344 ]

[ 344-a ]

*William M. McAllister,* Portland, argued the cause for appellant. With him on the briefs was Richard C. Josephson, Portland.

*Jack A. Gardner,* Eugene, argued the cause for respondent Weiss. With him on the brief was Allen L. Johnson, Eugene.

*Edward V. O'Reilly,* Eugene, argued the cause and filed a brief for respondent Auld.

Before O'Connell, Chief Justice, and Denecke, Holman, Tongue and Howell, Justices.

DENECKE, J.

## DENECKE, J.

The plaintiffs in these consolidated cases secured verdicts of approximately one million dollars against the defendant. The causes of action were based on fraud and the sales of property held as security in an alleged commercially unreasonable manner. Defendant appeals.

Fall Creek Gravel Co., Inc., is a corporation that built logging roads. The plaintiff Weiss is the president and sole stockholder. In the fall of 1969 the defendant, Northwest Acceptance Corporation, financed Fall Creek, including the acquisition of trucks by Fall Creek. Fall Creek acquired the trucks through Automotive Equipment which was Northwest's largest dealer and which had several officers and directors in common with Northwest. Automotive guarantied the payments due Northwest from Fall Creek on the truck acquisitions. Weiss guarantied Fall Creek's obligations to Northwest and to other creditors.

In the year or year and a half prior to August 1970, Fall Creek had financial difficulties. The seriousness of its difficulties is in dispute. About August 20, 1970, Northwest began to repossess the equipment. Fall Creek threatened to file bankruptcy. According to plaintiffs' evidence, Northwest then agreed with Fall Creek through its president, Weiss, that if Fall Creek voluntarily relinquished the equipment Northwest would allow Fall Creek to use the equipment, finish its jobs and later to liquidate in an advantageous manner.

Plaintiffs' evidence was that in reliance thereon, plaintiffs permitted the equipment to be brought in and sold, but that the sale, and Northwest's subsequent actions, were contrary to what it had promised plaintiffs. At the sale an outsider bid $250 more than Automotive and purchased the equipment for $472,750 which plaintiffs allege was grossly disproportionate to the equipment's true value. Automotive's bid of $472,500 was the total amount Fall Creek owed

Northwest. Fall Creek was later adjudicated bankrupt and the plaintiff Auld is trustee in bankruptcy for Fall Creek.

The jury found Northwest had defrauded Fall Creek and Weiss and awarded Weiss general damages and punitive damages and the trustee for Fall Creek, general damages.

I

**Fraud As Against Both Plaintiffs**

Northwest contends the trial court erred in denying its motion for a directed verdict upon the ground plaintiffs had not proved fraud.

The parties agree that when the alleged fraud consists of promises, as was the case here, the plaintiffs must prove that at the time Northwest made the promises, it did not intend to perform. Fraud can also be established by proving the promisor promised "with reckless disregard whether the promisor can or cannot perform." *Elizaga v. Kaiser Found. Hsopitals,* 259 Or 542, 548, 487 P2d 870 (1971). A failure to subsequently perform the promise is, of itself, insufficient evidence of fraud. *Conzelmann v. N. W. P. & D. Prod. Co.,* 190 Or 332, 352, 225 P2d 757 (1950).

We conclude that the testimony can reasonably be construed to support a finding that Northwest did not intend to perform material portions of the promises allegedly made by it or made promises with reckless disregard of whether it would perform.

There was testimony that Northwest promised that it would buy the equipment, allow Fall Creek to use it thereafter and, when Fall Creek had finished the jobs, liquidate whatever equipment was necessary to complete the payment of any balance due Northwest. The liquidation was to be on a piecemeal basis so as to yield the highest return. These promises were allegedly made after Northwest had started repossessing but before Fall Creek and Weiss agreed to cooperate in bringing in the equipment.

The jury could find that there was a meeting between representatives of Northwest and its dealer, Automotive Equipment, before the equipment started coming in out of the woods. At that meeting it was decided that Automotive would bid on the trucks. The parties did not discuss allowing Fall Creek to use the trucks after the sale.

If Automotive bid what it believed to be the value of the trucks, $100,000, it would take a loss as the balance owing which Automotive guarantied was $150,000. For this reason, at this meeting the parties discussed the possibility that Automotive might bid for all the equipment. It was discussed that Automotive might bid the total amount owing Northwest, $472,500 which included the $150,000 for the trucks which Automotive had guarantied. If Automotive Equipment could then sell the equipment for $472,500, plus its selling costs, neither Automotive nor Northwest would suffer any loss.

"Several days before the sale," Automotive and Northwest decided that Automotive would bid for all the equipment. This decision was not made known to Weiss or Fall Creek.

This evidence supports a finding that Northwest never intended to perform material portions of its promises or made promises with reckless disregard whether it would perform. The trial court correctly denied the motion for a directed verdict upon this ground.

The trial court's instruction on when promises can constitute fraud likewise was correct.

## II

### Liability to Weiss, Individually, on His Guaranties

Weiss alleged that because of Northwest's acts he was damaged individually in the amount of $1,500,000 because the value of his stock was destroyed and he remains liable for many of Fall Creek's debts.

[ 347 ]

The jury returned a verdict for Weiss in the amount of $122,164.74, general damages, which the jury found represented the debts and taxes for which Weiss was liable and which Fall Creek would have been able to pay if Northwest had not defrauded Weiss.

Northwest contends, assuming the corporation, Fall Creek, had a cause of action against Northwest, that Weiss, as an individual, does not.

■■ The general rule is that a stockholder has no personal right of action against a third party for a wrong to the corporation which lowers the value of the stock. This court has adopted this rule. *Smith v. Bramwell,* 146 Or 611, 615, 31 P2d 647 (1934); *Dant & Russell v. Ostlind,* 148 Or 204, 215, 35 P2d 668 (1934). Conceptually, the rule is based upon the separateness of the corporate entity and its stockholders. See cases cited in Annotation, 167 ALR 279, 280-284 (1947). Practically, it is based in part upon the rule that corporate creditors are entitled to be paid out of any recovery made to the corporation before the stockholders are entitled to payment. *Smith v. Bramwell,* supra (146 Or at 615)

■ The plaintiff Weiss acknowledges this to be the general rule, but contends he comes within a recognized and logical exception to the general rule. The exception is that a stockholder may have an individual cause of action against a third party if the third party breaches a duty directly owed to the stockholder as an individual. The stockholder may maintain such a cause of action although it is based upon the conduct of a third party which also creates a cause of action in the corporation. This exception was recognized by this court in *Smith v. Bramwell,* supra (146 Or 611), but found not applicable, supra (146 Or at 619-620).

The exception is illustrated by one of the cases relied upon by Weiss. *In Empire Life Insurance Co. of America Corp. v. Valdak,* 468 F2d 330 (5th Cir 1972), the plaintiff loaned Valdak Corporation $350,000.

[ 348 ]

Valdak pledged stock of National Insurance Company in amount of $1,200,000 with plaintiff as security for the loan. Plaintiff had previously gained control of National Insurance and by fraudulent mismanagement drove the value of the stock down. Valdak defaulted and plaintiff sold the pledged National stock to itself for $150,000.

The court held that if the defendant could prove these alleged facts, it would have a cause of action against plaintiff in addition to the cause of action by the corporation, National, against plaintiff. Valdak would have a cause of action independent of National because plaintiff had a duty to Valdak as the pledgor of stock not to deplete the value of the pledged property by intentional acts.

Weiss contends Northwest breached a special duty owed to him as a personal guarantor of Fall Creek's obligations. These obligations were not obligations of Fall Creek to Northwest but to other creditors for fuel, taxes and a bank loan.

Plaintiff Weiss relies upon two guaranty cases: *Buschmann v. Professional Men's Association,* 405 F2d 659 (7th Cir 1959), and *Sacks et al. v. AFNB,* 258 Ind 189, 279 NE2d 807 (1972). These cases hold that the guaranty created a special duty to the guarantor which enabled the guarantor to maintain a cause of action, independent of the debtor corporation, against the person to whom the guaranty was extended. Neither case, however, is persuasive as in both cases the individual was induced to enter into the guaranty by the fraud or misrepresentation of the defendant. For example, in the *Sacks* case the allegation was that the defendant bank represented to the individual plaintiff stockholder that if the plaintiff guarantied the loans to the corporation, the bank would provide continual financing of the corporation. The bank refused to continue financing and the plaintiff stockholder incurred liability on his guaranty.

In contrast to *Sacks* and *Buschmann,* Weiss was not

induced by Northwest to enter into any new and separate relationship. Plaintiff Weiss guarantied the debts of Fall Creek long before any alleged fraud was perpetrated by Northwest. Weiss' guaranties were in no way induced by or in consideration for any misrepresentations or broken promises by Northwest. Any injury Weiss suffered was in no way separate and distinct from any loss suffered by Fall Creek.

Weiss is in no different position than any other creditor of Fall Creek. Weiss gave credit to Fall Creek in the form of making a guaranty to the bank and to others. His action is similar to that of the bank or others in lending credit to Fall Creek. When, after the credit is extended, the value of the assets of Fall Creek are lessened allegedly by the fraud of Northwest and, therefore, Fall Creek is unable to pay its creditors, the bank and other creditors cannot maintain separate actions against Northwest. The right of recovery is solely that of Fall Creek. That is true of Weiss as well as other creditors.

Weiss cannot recover for his liability on his guaranties of Fall Creek's obligations. That part of the judgment awarding plaintiff Weiss $122,164.74 must be reversed.

### III
### Liability To Weiss On His Claim For Wages

Apart from the damages claimed by Weiss, individually, because of his liability on the guaranties, the jury awarded him the amount of $2,400 which it found he lost as wages because of fraud by Northwest. Weiss contends Northwest misrepresented to him that it would pay him a salary for several months while he made an orderly disposition of the equipment. This would create a cause of action individually in Weiss separate from any claim by Fall Creek.

Northwest introduced evidence that it made no such promise but the jury found against it.

Northwest's other defense is that Weiss did not ade-

quately plead this as an element of damage and, therefore, the court incorrectly overruled its demurrer to plaintiff's complaint.

■ Plaintiff pleaded that Northwest misrepresented to Weiss that he would be compensated for his work in selling the equipment of Fall Creek. In his damage paragraph, however, Weiss did not allege he lost wages or compensation because of this misrepresentation. He generally pleaded that as a result of the conduct of Northwest he was damaged in the sum of $1,500,000.

This is not a recommended method to allege a specific claim of damages. We do not find it, however, to be reversible error. The pleading served its principal function and placed Northwest on notice that this claim for lost compensation was being made. It requested an instruction limiting its liability to Weiss to the amount he may have earned as salary if he had been employed to sell the equipment.

■ The plaintiff Weiss was entitled to recover for his lost compensation. That part of the judgment awarding plaintiff $2,400 is affirmed.

## IV
### Punitive Damages

■ The jury returned a verdict in favor of Weiss against Northwest for $500,000, punitive damages, in addition to the $122,164.74 and $2,400, general damages. Northwest attacks the award of punitive damages.

That part of the judgment awarding Weiss punitive damages must be reversed. The jury was instructed in essence that it could award punitive damages to discourage Northwest from engaging in certain misconduct which caused Weiss damage. The jury found Northwest had engaged in conduct damaging Weiss in the amount of $122,164.74 and other conduct damaging Weiss $2,400. We have decided earlier in this opin-

ion that Weiss is not entitled to any damages for liability on guaranties, that is; $122,164.74. We cannot determine whether the jury awarded Weiss $500,000 because of the conduct which it found made him liable on the guaranties or for conduct which caused him to lose wages. For this reason the award of punitive damages must be reversed.

Plaintiff, however, is entitled to a new trial upon the issue of punitive damages. A jury might find punitive damages are awardable because of Northwest's conduct which caused Weiss to lose wages.

Northwest contends there was no evidence to justify the submission of punitive damages; however, we conclude to the contrary. We have already held there was evidence of fraud. This consisted of Northwest making promises which it did not intend to perform or making them in reckless disregard of whether it would perform. The jury found this conduct deprived Weiss of two months' employment.

In *Glenn v. Esco Corp.*, 268 Or 278, 520 P2d 443 (1974), defendant's personnel manager communicated to plaintiff's supervisor words to the effect that plaintiff was unworthy of credit. The jury found the communication defamatory and awarded punitive damages. We affirmed for the reason that the communication could be seriously detrimental to the workman's job:

> "We are of the opinion that the conduct the jury could have found the defendant engaged in violated 'societal interests' of importance. We are further of the opinion that the assessment of punitive damages might deter such conduct. * * *." 268 Or at 282.

Because of the same considerations we hold the evidence would justify an award of punitive damages.

## V

### The Commercial Reasonableness of the Sale

The plaintiff trustee alleged as a second cause of action that Fall Creek was damaged because North-

west sold the equipment in a commercially unreasonable manner. The jury awarded the trustee $325,000 because of the alleged fraud and/or because it found the equipment was sold in a commercially unreasonable manner.

Northwest contends that the trial court erroneously admitted evidence relating to this charge.

The uncontradicted evidence was that Northwest offered the equipment for sale in the same condition it was in when it was brought from the woods; that is, uncleaned and unwashed. The trial court admitted evidence that it would "make a difference in the appearance of the equipment and the interest in the equipment if it was cleaned and washed." This could create an inference that cleaning and washing could result in the equipment being sold for a higher price.[1]

ORS 79.5040(3) provides that the disposition of collateral by the secured party may be by public or private proceedings, in a unit or by parcels, at any time, place or on any terms, "but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable."

Subsection (1) of the same statute, however, states: "A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing."

Northwest contends that because of the provision the property may be sold "in its then condition," as a matter of law it could sell the equipment in its unwashed, unclean condition. Evidence that cleaning and washing might increase the amount paid for the equipment was, therefore, irrelevant and prejudicial.

Neither the parties nor the court have found any

---

[1]The trial court admitted other evidence: "In the auction business * * * a hundred dollar paint job is worth $1,000 resale." This testimony, however, expressly referred to a piecemeal sale which was only relevant to Weiss' claim, not to Auld's.

direct judicial or other interpretation of this statute under circumstances similar to those present here.

The purpose of the statute is fairly evident from its language and the commentaries of the drafters. Grant Gilmore, one of the drafters, wrote:

"[T]he Code secured party, like his pre-Code counterparts, must 'use every effort to sell the estate [collateral] under every possible advantage of time, place and publicity.'

"* * * * *.

"* * * The obligation on the secured party is to use his best efforts to see that the highest possible price is received for the collateral." 2 Gilmore, Security Interests in Personal Property, 1233-1234 (1965).

Gilmore further wrote:

"The authorization to prepare or process goods for sale also fits in with the secured party's operation of the business after default and would be subject to the same limitations of reasonableness. From another point of view, this provision reflects the policy of an analogous provision in the Sales Article of the Code (§ 2-704) [ORS 72.7040], which authorizes (but does not require) a seller whose buyer repudiates a contract of sale to complete the manufacture of unfinished goods 'in the exercise of reasonable commercial judgment for the purpose of avoiding loss and of effective realization.' The two sections deal with comparable situations and should be construed consistently with each other." Gilmore, supra, at 1238.

ORS 72.7040(2), the section of the UCC chapter on Sales referred to by Gilmore, provides:

"Where the goods are unfinished an aggrieved seller may in the exercise of reasonable commercial judgment for the purposes of avoiding loss and of effective realization either complete the manufacture and wholly identify the goods to the contract or cease manufacture and resell for scrap or salvage value or proceed in any other reasonable manner."

From the context of the entire statutory scheme, aided by Gilmore's comments, we interpret the statute

[ 354 ]

to mean that the security holder may sell the collateral in the condition it is in when the security holder gains possession or may have to prepare it for sale, whatever is commercially reasonable. Preparing it for sale might include washing and cleaning the property.

The evidence was relevant.

The trustee also alleged the sale was conducted in a commercially unreasonable manner because terms were imposed at the beginning of the sale which were more onerous than the terms stated in the advertisement of the sale. Northwest contends the trial court erred in failing to strike this allegation because there was no evidence to support the charge.

The advertisements for the sale stated the terms were to be cash. At the beginning of the sale Northwest's representative announced that the terms were to be cash or certified check. There was testimony when sales such as this were advertised with the terms being stated as cash that the practice was that uncertified checks were acceptable. There was testimony that whether they were accepted depended upon the credit of the buyer or if the buyer's credit was uncertain, the equipment could not be moved until the check cleared. The evidence was that the outsider who was the high bidder paid the price of $472,750 by an uncertified check. By stating at the sale the terms were to be cash or certified check, the jury could have found this changed the terms from cash or approved uncertified check. The jury also could have found this change dissuaded prospective purchasers from bidding and was commercially unreasonable.

## VI
### Consolidation of Cases for Trial

The trial court granted Weiss' motion to consolidate Weiss' case and the trustee's case for trial. The trial court denied Northwest's motion for a separate trial on the issue of fraud. Northwest contends the trial court

[ 355 ]

erred in both rulings and the error prejudiced it both as to Weiss and as to Auld.

ORS 11.050 provides for consolidation of actions for trial. ORS 11.060 provides for separate trials of certain claims or issues. Both statutes are substantially identical to Rule 42 of the Federal Rules of Civil Procedure. We have not yet interpreted either statute.

In interpreting Rule 42 the federal courts have held: The trial court may consolidate for purposes of convenience and economy; the trial court cannot consolidate if consolidation will lead to confusion and prejudice. We adopt these general considerations. ORS 11.060 provides that separate trials may be ordered "* * * in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy * * *." Inasmuch as the trial court's rulings concern the administration of the business of the trial court, the appellate courts grant the trial courts a wide range of discretion in making such rulings. 9 Wright and Miller, Federal Practice and Procedure, § 2381-2392 (1971). We are of the opinion that the trial court acted within its range of discretion in its rulings on these subjects.

We also hold the trial court did not err in its rulings concerning the manner of examination of witnesses of one plaintiff by the attorney for the other plaintiff. Likewise, the trial court did not err in denying Northwest's counsel the right in cross-examination to lead Northwest's officers called as witnesses by plaintiff. *Sinclair v. Barker,* 236 Or 599, 607-608, 390 P2d 321 (1964).

## VII
### Rulings on Evidence of Damages

Northwest contends the trial court erred in permitting the witness Wallen to testify as an expert and give opinion testimony of the value of the equipment at the time of the auction sale. Northwest contends he was not qualified.

Whether a witness is qualified as an expert is entrusted to the trial court's judgment; however, that judgment is not uncontrolled. *Meyer v. Harvey Aluminum,* 263 Or 487, 489-491, 501 P2d 795 (1972). For many years Wallen supervised road construction including assisting in the acquisition of equipment. He had been the general superintendent of Fall Creek for the last nine years. He participated in purchasing all the equipment involved. After the sale he was general superintendent for the party who bought the equipment. The witness attended many auction sales of equipment. There was ample evidence to justify the trial court's decision that the witness Wallen was qualified.

On the other hand, the trial court struck the equipment valuation given by one of Northwest's witnesses, Barker, because the trial court found he was not qualified as an expert. The witness admitted he had little knowledge of the value of rock crushers which were a substantial part of the equipment. He also, in effect, stated he based his value of the crushers primarily on what others told him. The trial court was supported by the evidence in ruling that Barker was not qualified to testify to the value of the entire lot of equipment, including the crushers.

Northwest offered into evidence the depreciation schedule prepared by Fall Creek's accountant to compute Fall Creek's income taxes for the fiscal year prior to the sale. The schedule listed the equipment and purported to state the cost of each item of equipment. Northwest offered the schedule to show that the cost of some items was less than the value claimed by plaintiff at the time of sale. The trial court refused the offer and Northwest claims error.

The accountant whose firm prepared the schedule testified that in many instances the figure shown as the "cost' of an item was not the actual "cost." He stated one frequent reason for this was that if an item was purchased and part of the purchase price was a

trade-in, the cost would be listed on the schedule as the cash paid, plus the cost of the trade-in, less the book depreciation of the trade-in. The trial court was operating within the latitude accorded it by excluding the schedule because its misleading quality could very well outweigh its probative value. *Carter v. Moberly,* 263 Or 193, 200, 501 P2d 1276 (1972).

The judgment in plaintiff Weiss' case is reversed and remanded to the trial court with instructions to delete those parts of the judgment awarding plaintiff anything other than the $2,400 general damages. Weiss' case is remanded for a new trial on the issue of punitive damages.

The judgment in the plaintiff Auld's case is affirmed.